CATHERINE A. ADELSBERGER, Administratrix of Estate of FRANK J. ADELSBERGER, v. RICHARD P. SHEEHY, Administrator of Estate of WILLIAM P. SHEEHY, Appellant.—79 S. W. (2d) 109.

Division One, February 8, 1935.

498

*Jones, Hocker, Sullivan, Gladney & Reeder* and *Web A. Welker* for appellant.

*B. Sherman Landau* and *Everett Hullverson* for respondent.

FERGUSON, C.—Frank J. Adelsberger was injured in a collision between his automobile and an automobile operated by William P. Sheehy. The collision occurred July 14, 1928, at the intersection of Magnolia and Nebraska avenues in the city of St. Louis. On September 13, 1928, Frank J. Adelsberger commenced an action in the Circuit Court of the City of St. Louis, against the said William P. Sheehy, for damages for the injuries so received. The trial of the cause resulted in a verdict and judgment for plaintiff in the sum of $10,000 and defendant appealed. On September 24, 1930, while the appeal was pending in this court, the plaintiff died and thereupon his widow, Catherine A. Adelsberger, was appointed as administratrix of his estate and as such was substituted as plaintiff and respondent here. The judgment was reversed and the cause re-

500

manded (Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644), whereupon the cause was revived and continued in the Circuit Court of the City of St. Louis in the name of Catherine A. Adelsberger, administratrix of the Estate of Frank J. Adelsberger, deceased, plaintiff and, the defendant William P. Sheehy having died during the pendency of the appeal, against Richard P. Sheehy, administrator of the estate of William P. Sheehy, deceased, as defendant. The cause was then tried in January last, upon an amended petition filed by plaintiff administratrix and answer thereto by defendant administrator, resulting in a verdict and judgment for plaintiff in the sum of $10,000 from which judgment defendant has appealed.

Appellant concedes, "that the evidence was sufficient to justify a finding by the jury that the injuries sustained by Frank J. Adelsberger were the result of the negligence of William P. Sheehy" and therefore makes no point as to the sufficiency of the evidence to sustain the charges of negligence made by the petition and submitted by instructions to the jury but contends that the demurrer to the evidence should have been sustained on the ground that it conclusively appears from the evidence that the injuries sustained by Frank J. Adelsberger caused or resulted in his death and therefore this cause of action abated with his death and did not survive to his legal representative. Appellant also asserts the proposition in this way, that in order to maintain the action plaintiff administratrix was required to allege and prove that the injuries sustained did not result in the death of Frank J. Adelsberger and that the petition does not allege nor the proof show that his death did not result from such injuries.

The action for personal injuries brought by Frank J. Adelsberger was a common-law action which by the common law abated with his death. However, under our statute (Sec. 3280, R. S. 1929) such an action "brought by an injured party for personal injuries, *other than those resulting in death*," does not "abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued" but survives "to the personal representative of such injured party, and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability and the measure of damages" is "the same as if such death or deaths had not occurred." (Italics ours.) But "whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who . . . would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured" (Sec. 3263, R. S. 1929) and in such

case damages for death of the injured party "may be sued for and recovered: First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased," etc.; third, if the deceased be an unmarried minor "by the father and mother . . . or if either of them be dead, then by the survivor" or, fourth, if there be no husband, wife, minor child or children or if the deceased be an unmarried minor and there be no father or mother surviving "then . . . . suit may be instituted and recovery had by the administrator or executor of the deceased." [Secs. 3264, 3262, R. S. 1929.] Actions instituted by virtue of the last three sections cited, i. e., Sections 3263, 3264, 3262, Revised Statutes 1929, the wrongful death statutes, must be commenced "within one year" after the cause of action accrues Section 3266, Revised Statutes 1929. Plaintiff rests her right to revive the present action and continue and maintain it as administratrix upon the authority of the survival statute, Section 3280, first above cited and quoted, but defendant contends that the evidence conclusively shows that the injuries sued for in the action brought by Frank J. Adelsberger resulted in his death and therefore the action abated with his death, did not survive to his personal representative, and that upon his death an entirely new cause of action arose by virtue of the wrongful death statutes, supra, in favor of the persons named therein. For a discussion of the cause of action, and the nature thereof, arising under the wrongful death statutes see Jordan v. St. Joseph Ry., Light, Heat and Power Co., 335 Mo. 319, 73 S. W. (2d) 205.

Before reviewing the evidence relating to the injuries and the cause of death we shall note the contention as to the sufficiency of the amended petition to state a cause of action which appellant seems to advance. It is said the amended petition does not allege that the injuries sued for did not result in the death of Frank J. Adelsberger but on the contrary alleges "that such injuries in fact caused or contributed to his death." It is true that the petition must state facts sufficient to state a cause of action not only against the defendant but also in favor of plaintiff and in this instance facts that bring the plaintiff within the terms of the statute giving him the right to sue. The petition appears to meet such requirement. The amended petition states that Frank J. Adelsberger originally instituted the action; that same was tried "before a jury, resulting in a verdict" and that an appeal from the judgment thereon was taken to this court; that while the appeal was pending here Frank J. Adelsberger died; that the judgment was reversed and the cause remanded; that plaintiff is the "duly appointed, qualified and acting administratrix of the estate of Frank J. Adelsberger, deceased;" that she duly revived and now prosecutes this action as such administratrix; that

the original defendant William P. Sheehy died subsequent to the former trial and that the present defendant is the duly appointed and acting administrator of his estate. The facts of the collision are then set forth and it is alleged that the collision was caused by certain specified negligent acts of William P. Sheehy and that "as a direct result of the negligence and carelessness of said William P. Sheehy" Adelsberger sustained numerous bodily injuries which are enumerated; that "all of said injuries were serious and permanent . . . that his health and earning capacity were greatly impaired and limited;" that he was obliged to incur "doctor's bills for medical treatment and hospital bills in the sum of $1500" and that "he was caused to suffer great bodily pain and anguish of mind." The petition then states: "Said injuries so sustained by the said Frank J. Adelsberger were serious and permanent but did not cause or contribute to cause his death aforesaid." We do not find therein any allegation or statement to the effect, as appellant states in his assignment of errors, "that such injuries caused or contributed to the death of Frank J. Adelsberger," but to the contrary the petition in plain language states that the injuries sued for "did not cause or contribute to cause" his death.

One of the findings which the jury was required by plaintiff's instruction to make in order to return a verdict in plaintiff's favor was "that the injuries did not directly cause or contribute to cause his (Frank J. Adelsberger's) death." The inquiry which appellant calls upon us to make to determine whether there was any substantial evidence to warrant the submission of that question to the jury or whether, as appellant claims, it conclusively appears from the evidence that the injuries resulted in death, requires a review of the evidence relating to the injuries and the cause of death. However, we shall first note certain preliminary facts. The collision occurred July 14, 1928. At that time Frank J. Adelsberger was forty-seven years of age, married, and resided with his wife in the city of St. Louis. He had one child, a daughter who was then in her first year of nurses' training at the Jewish Hospital in that city. Adelsberger was employed as a punch press operator at the American Car & Foundry Company at an average wage of $14 per week. His later employment and earnings will be hereafter referred to. About noon on the date mentioned, supra, which was Saturday, as Adelsberger driving his Ford roadster entered the intersection of Magnolia and Nebraska avenues, his automobile was struck · by a Franklin sedan driven by William P. Sheehy. The Adelsberger automobile was overturned and as tending to show the violence of the impact the testimony concerning damage to the Adelsberger automobile was that the right front wheel and both wheels on the left side were broken; the fenders, radiator, windshields, headlights, top and body were broken

and "smashed" and the "steering apparatus broken." Adelsberger was thrown from the automobile to the street and was found lying under the overturned automobile with the frame of the windshield across his right leg. He was taken to his home. On arrival there "he fainted and fell to the floor." Upon being revived Adelsberger was taken to the office of Dr. Sigoloff who made an examination and treated him. Dr. Sigoloff treated him continuously, that is at frequent intervals, from that time until his death on September 24, 1930, more than two years later. The testimony of Dr. Sigoloff constitutes the principal evidence offered on the part of plaintiff concerning the injuries, the nature and result thereof, and the immediate cause of death. The doctor testified that when brought to his office Adelsberger was "very short of breath," his breathing labored; "he complained of marked pain in the right lower chest;" "a large laceration on the right buttock" was bleeding profusely; there was "a bruise on the right lower chest" and "also bruises on the right hip, the right forearm and the right side of the face which were painful;" the right ankle was bruised and swollen. The laceration on the right buttock was two and a half or three inches long and the doctor "sewed the wound up, taking five stitches." Adelsberger spent the following day, Sunday, at his home in bed but on the next day, Monday, returned to his work. Adelsberger testified at the first trial, and his testimony given at that time was read at this trial, that he had not "lost" more than four days from work on account of illness during the sixteen months which had elapsed since the accident. The bruises quickly disappeared and the knee and ankle injuries "healed after two or three weeks." Adelsberger, however, was afflicted with a heart condition known as "aortic insufficiency," commonly spoken of by the layman as "a leaking heart." "It is a leak in the aortic valves of the heart that allows blood to flow backward. When the heart goes into contraction the normal, healthy valve opens and as contraction stops the valve closes so that the blood will not run back. Aortic insufficiency means that the valve is insufficient to prevent that backflow." Adelsberger had had this heart condition for many years prior to the accident but it had not caused pain or in any way incapacitated or disabled him due to the fact that a "state of compensation" had developed. The medical witnesses testified that though an aortic insufficiency is not "curable" and that "medical science has never found a cure for it," nature quite generally comes to the assistance of a person so afflicted and through or by the growth or increase in the size, strength and capacity of the heart muscle the heart is able "to do its work" and despite the "back leak . . . keep the circulation going." When that stage is reached the heart is said to be compensated or in a state of compensation. One doctor puts it this way "when the muscle of the heart is able (despite the

'back leak') to do the work that is required; that is, to pump the blood around, then the heart is said to be compensated.'' Another doctor stated that in case of aortic insufficiency while ''the leak is always present'' yet ofttimes ''nature thickens the walls of the heart and enlarges the blood chamber making it possible for the heart muscle to do more work and thereby correct the incapacity of the valves to hold the blood'' and then the heart is ''for all purposes practically as good as before the injury or disease occurred to it . . . as long as it remains compensated.'' There was medical testimony that this compensation might be broken, destroyed, or ruptured by a blow on the chest or a chest injury or by physical shock. Dr. Sigoloff testified, that as a result of such an ''impact'' or physical shock ''a definite change within the heart'' may occur; ''you might say there is a rupture. It may be microscopic but sufficient to give rise to marked symptoms.'' The symptoms are ''breathlessness,'' ''shortness of breath'' and ''increase in the pulse rate.'' As to this particular case Dr. Sigoloff testified that as a result of the accident ''the compensation was definitely broken;'' that ''the accident aggravated the heart condition;'' and that it continued ''to become worse up to the time of his death.'' Plaintiff also had evidence tending to show the development of ''diaphragmatic pleurisy'' and that same resulted from injuries received in the accident. Dr. Sigoloff stated these resultant conditions were permanent. The heart condition had not prior to the accident caused Adelsberger any discomfort or pain nor had it in any way disabled or incapacitated him. Adelsberger testifying at the first trial of this case, which was, as we have noted, approximately sixteen months after the accident, stated, that prior to these injuries he had not been troubled with ''shortness of breath'' but that shortly thereafter his breathing became ''heavy;'' that after the accident the heart condition caused ''pain and difficulty in breathing,'' ''a shortness of breath'' accompanied by ''discomfort and pain at times;'' that he had become nervous; that ''any exertion tires me very much;'' and that he had lost about eleven pounds in weight. The testimony of the widow, the daughter and Dr. Sigoloff continues the recital of conditions subsequent to the first trial and during the interim between that date and the death of Adelsberger, a period of approximately ten months. The widow testified that after the accident Adelsberger lost weight; ''his breathing was very heavy . . . he couldn't get his breath;'' that he ''wasn't able to sleep at night'' . . . couldn't lie in bed . . . had to sleep sitting in a chair. All the testimony is to the effect that prior to the date he sustained these injuries Adelsberger was an active man in apparent good health and had not required medical treatment for fifteen years or more. The widow testified that following these injuries he was regularly under treat-

ment by Dr. Sigoloff; going to the doctor weekly, sometimes two or three times a week and Dr. Sigoloff's testimony was to substantially the same effect. The daughter who was a graduate nurse, testified that prior to these injuries her father had been a very active man; that he would "come home from his work" and "tinker about the house;" that thereafter he "lost interest" and "did not do the things he did before the accident;" he "seemed to brood a lot," appeared tired and morose, did not sleep well, could rest or sleep only in a "sitting posture," had to sleep either in a chair or "propped up in a sitting position in bed;" "his heart beat so hard that from across the room you could see his whole body jarring." Some weeks after the accident Adelsberger quit his employment with the American Car & Foundry Company and shortly thereafter took an office position with the Hummel Manufacturing Company at a salary of $150 per month. He continued steadily in that employment until July 4, 1930. His death, it will be remembered, occurred September 24, 1930. Except an aggregate of four days mentioned, supra, it does not appear that Adelsberger lost any time from work or wages or salary, on account of illness or physical disability prior to July 4, 1930. We come now to the evidence relating to the last illness and death of Adelsberger. On the 5th day of July, 1930, he went to the Jewish Hospital "to have his tonsils taken out" but following the tonsil operation returned to his home on the next day, July 6. Except for a few hours he did not thereafter resume his work. The widow stated that on July 17, "he had a collapse" and was taken to the Jewish Hospital. The daughter who was employed at the time at that hospital and who was in constant attendance upon her father relates: "For four days we didn't expect him to live. I stayed with him constantly and there was always a doctor in the room with me for four days and nights;" that Adelsberger remained in the hospital about eleven days and then "I talked to Dr. Sigoloff about taking him home. I could do just as much for him there" and it was decided to take him home; that he was thereafter confined to bed at his home, a period of approximately two months; and that during the last illness he suffered a great deal of pain;" "had extreme pain in his chest" and "could hardly get his breath." On direct examination Dr. Sigoloff, testifying concerning the last illness and death, stated that bronchial pneumonia, a germ disease, developed and that death was caused by the bronchial pneumonia and that a person with a heart condition "like he had . . . had very little chance to survive an attack of bronchial pneumonia." The doctor was then asked: "Did the injuries he sustained in the accident, the injury to the heart and the pleurisy which he suffered cause—or contribute to cause his death;" his answer was, "Only so far as discomfort and pain may affect one's condition, only to that

extent, but not directly.'' On cross-examination questions were propounded and answers given as follows:

''Q. You say his heart condition became worse, in your opinion, as result of this automobile accident? A. Yes.

''Q. And that continued up to the time of death? A. Yes, he had the heart condition up to the time of his death.

''Q. Did this condition as caused by this automobile accident contribute to his death? A. No, not directly.

''Q. Well, indirectly? A. The question was asked before. In so far as the increase in pain, the discomfort, the mental anguish . . . add to the condition yes, but not directly.

''Q. I don't understand you, doctor, it was either directly or indirectly. Did it indirectly do it? A. Only so far as I said: as it caused pain and suffering and so on, only so far as the pain and suffering added to the condition, but I don't see how they could possibly directly at all.

''Q. Did they add to the condition? A. The increase in the suffering, and so on, of course, added, but didn't contribute to it directly at all.

''Q. You mean to say that the probabilities are he would have died just as soon, regardless of the automobile accident? A. That is something that can't be answered definitely at all. The man developed bronchial pneumonia. If he had not developed bronchial pneumonia he may have gone on indefinitely, so the case does not hold true here at all.

''Q. Your testimony, then, is to the effect that the automobile accident had absolutely nothing to do with his death? A. Not directly, no. . . .

''Q. The automobile accident didn't cause the bronchial pneumonia did it—occurring a little over two years after the accident you would not say it was caused by the automobile accident would you doctor? A. No, that was not the cause of the bronchial pneumonia. Germs caused that . . .

''Q. You say the automobile accident did not cause his death? A. I said it did not directly contribute to his death.

''Q. It did indirectly, did it? A. Only in so far as the things that he had—

''Q. Did it indirectly cause his death? A. Over a span of years it would have. I can't answer that, no.

''Q. You can't answer that at all, whether it did or did not? A. All I say is it did not directly contribute to the death of the man.

''Q. Can you answer the question whether or not it did indirectly cause it? A. No, I can't answer that . . .''

The testimony of Dr. Sigoloff, the attending physician, constitutes the sum of the evidence as to the cause of death. It is in substance

and effect, as appears from the foregoing excerpts therefrom, that the bronchial pneumonia was the immediate and proximate cause thereof and that the injuries sustained in and resulting from the automobile collision did not contribute directly, that is proximately, to the death of Adelsberger; that the heart and pleurisy conditions added to and increased the pain and suffering and that on account of such conditions Adelsberger had "very little chance to survive the attack of bronchial pneumonia." The doctor's conclusion is that such conditions but remotely, if at all, contributed to the death. If it be taken as a fact that because of the conditions resulting from the injuries sustained in the automobile collision his physical strength and resistance was so weakened and impaired that Adelsberger succumbed more readily to the onslaught of the germ disease of pneumonia, which caused his death, nevertheless the pneumonia was the proximate cause of the death and the injuries at most but remotely connected therewith. Certainly, in view of the doctor's testimony, the court cannot say as a matter of law that the evidence conclusively shows that the injuries proximately contributed to cause the death or that there is no substantial evidence that the injuries did not result in, or proximately contribute to cause, the death. If the evidence as to the cause of death is conflicting, or doubtful, a question is made for the jury and our conclusion is that the cause of death was, under the evidence, in this case, an issuable fact which was properly submitted to the jury whose finding thereon is conclusive.

It is insisted that the verdict and judgment for $10,000 is excessive. The action was revived and carried on by the administrator, under the survival statute, supra, on the theory that, and the jury so found, the death of Adelsberger did not result from the injuries sustained in the collision; that is that his death resulted from a cause other than such injuries therefore there can be no recovery for or on account of the death itself and the damages recoverable must be confined to such as the deceased, Adelsberger, suffered up to the time of his death. [Sedgwick on Damages, sec. 570b; 17 C. J., p. 1325.] Otherwise stated, the plaintiff administrator is entitled to recover only such damages as accrued antecedent to the death of Adelsberger and which he could have recovered had he survived (Sec. 3280, R. S. 1929); this includes compensation for physical and mental pain and suffering, loss of wages, if any, in the period between the accident and his death, and medical and hospital expenses, proximately resulting from the injuries sustained in the collision. Loss of earnings by reason of impairment in earning capacity caused by such injuries, for the period that he would have lived, had he lived out his expectancy of life based upon his age and condition of health prior to the injury, cannot be considered. The only loss of time from his work, and consequent loss of wages,

on account of physical disability, prior to July 4, 1930, a period of approximately two years, was about four days. After July 4, 1930, he was unable to return to his work and died September 24, 1930. He entered the hospital on July 5, 1930, for a tonsil operation. Dr. Sigoloff stated the tonsil trouble did not result from, and was in no way connected with, the injuries received in the collision. The tonsil operation was performed and he returned to his home on July 6. On July 17, as the widow states, he "had a collapse" and was again taken to the hospital. It does not appear to just what extent, if any, the tonsil trouble and operation may have contributed to this development. The generalities of the testimony about this illness allow reasonable inferences that the heart and pleurisy conditions, which directly resulted from the injuries, had become worse and that serious trouble had developed therefrom causing intense pain and suffering however the doctor says that had not the bronchial pneumonia, which caused his death, developed Adelsberger might "have gone on indefinitely." There was testimony that Adelsberger incurred expenses for hospital and medical treatment for the heart and other conditions, resulting from the injuries, in the aggregate amount of $546. It is difficult to separate and segregate the injuries, and the consequences thereof, proximately resulting from the accident, from the other factors and elements entering into the situation, and to appraise same in terms of damages and we are inclined to think the jury may have been somewhat confused in the attempt to do so. Mindful of the evidence concerning a chronic heart condition and the pleurisy trouble, nervousness, sleeplessness, mental anguish and loss of weight resulting from the injuries sustained in the accident, nevertheless in view of the applicable measure of damages in this instance, noted supra, we are constrained to hold the verdict is excessive by at least $3000. If therefore plaintiff will within ten days enter a *remittitur* of $3000 the judgment will stand affirmed for $7000 as of the date of the original judgment; otherwise, the judgment is reversed and the cause remanded for a new trial. *Sturgis* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.