Clyde HARRIS, Administrator of the Estate of Alma Harris, Deceased, Plaintiff-Appellant-Respondent,

v.

Ernest (Pete) GOGGINS, Charles Louis Woodruff, Banks Ray, Sr., Banks Ray, Jr., d/b/a Nashville Produce Company, Raymond Caldwell and David Caldwell, Defendants-Respondents,

Ernest (Pete) Goggins, Defendant-Appellant.

No. 50006.

Supreme Court of Missouri,

En Banc.

Dec. 9, 1963.

Rehearing Denied Jan. 13, 1964.

**8**

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for appellant Ernest Goggins.

McClintock & Medley, Charles W. Medley, Flat River, for respondent Clyde Harris.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondents Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray, Jr.

Morris E. Stokes, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondents Raymond Caldwell and David Caldwell.

HOLMAN, Judge.

Clyde Harris, administrator of the estate of Alma Harris, filed this suit to recover damages for personal injuries sustained by Alma Harris during her lifetime as a result of the alleged negligence of the defendants. Defendants were Ernest (Pete) Goggins; Charles Louis Woodruff; Banks Ray, Sr. and Banks Ray, Jr., doing business as Nashville Produce Company; Raymond Caldwell and David Caldwell. The trial resulted in a verdict in favor of plaintiff and against defendant Goggins in the sum of $5,500, and against plaintiff and in favor of all other defendants. Defendant Goggins appealed from the judgment in favor of plaintiff, and plaintiff appealed from the judgment in favor of the remaining defendants. These appeals were properly taken to the St. Louis Court of Appeals. While that court gave the appeals separate numbers, they were properly disposed of in one opinion.

The court of appeals filed an opinion on December 18, 1962, in which "[t]hat part of the judgment of the court below which was entered in favor of the plaintiff against defendant Goggins in the sum of $5500 is reversed and the cause as to said defendant is remanded with directions to permit plaintiff to amend his petition in the respect indicated in this opinion and if he does so to have a retrial on all issues as to said defendant. The judgment in favor of all other defendants is affirmed." Harris v. Goggins, Mo.App., 363 S.W.2d 717, 736.

On December 29, 1962, defendant-appellant Goggins filed a motion for rehearing or in the alternative to transfer to the supreme court. No motion for rehearing or to transfer was filed by plaintiff-appellant. On January 25, 1963, the court of appeals filed a per curiam opinion in which it discussed plaintiff's right to maintain this action,

which opinion concluded with the following order: "Therefore, after opinion, and during the pendency of defendant's motion for rehearing and in the alternative for transfer of the cause to the Supreme Court of Missouri, and in accordance with Article V, Sec. 10 of the Constitution of Missouri 1945 and Rule 84.05(g) of the Supreme Court, the court on its own initiative doth order that the cause be and the same is hereby transferred to the Supreme Court because of the general interest and importance of the question involved in the cause and for a re-examination of the existing law in the light of the circumstances of this cause." 363 S.W.2d l. c. 737.

We will adopt a portion of the opinion of the court of appeals which states the facts concerning the manner in which Mrs. Harris was injured:

"Alma Harris had been a patient in Barnes Hospital in the City of St. Louis from July 3, 1959, to July 31, 1959. In this hospital an operation was performed on her dorsal spine, at which time a metastatic cancer was found. Following this surgery Alma Harris became paralyzed in her lower extremities. On the day the collision took place, viz., July 31, 1959, she was being transported in an ambulance driven by David Caldwell, who was in the employ of Raymond Caldwell, from Barnes Hospital to her home in Flat River, Missouri. In the course of transporting Alma Harris from Barnes Hospital to her home, the ambulance was driven southwardly on Highway 67 and when near its intersection with Cantwell Lane in St. Francois County, which lane is for east and westbound traffic, David Caldwell saw a northbound truck on Highway 67 when it was about three feet across the center line of the highway. David Caldwell swerved the ambulance toward the shoulder of the road to avoid the truck. The ambulance was struck by the truck at a point north of the intersection.

"Prior to the approach of the ambulance to the intersection of Cantwell Lane and Highway 67, defendant Goggins had been driving eastwardly on Cantwell Lane. From a stopped position, on the west side of Highway 67, on said Lane, defendant Goggins drove onto and across Highway 67, which at this point is a two lane highway.

"Defendant Woodruff was in the employ of defendants Banks Ray, Sr. and Banks Ray, Jr., doing business as Nashville Produce Company, and was driving a truck owned by them northwardly on Highway 67. At a point south of Cantwell Lane he saw the Goggins automobile cross Highway 67 and testified he swerved to the left to avoid striking the automobile. He estimated he drove over onto the west side of the highway about 3½ feet. Alma Harris, as we have stated, was a passenger in the ambulance and had been placed on a cot therein and when the ambulance was struck by the truck, it caused her to be propelled toward the front end of the cot and knocked her feet partly off the edge of the cot. She complained of pain following the collision and was taken to the Bonne Terre Hospital where she remained until the time of her death on October 27, 1959."

It was alleged in plaintiff's petition that Alma Harris died on October 28 [27], 1959, and that plaintiff, who is the son of Alma Harris, was appointed administrator of her estate on the 16th day of February, 1960. The petition then alleged various specifications of negligence which allegedly caused the collision, and further alleged that "as a result of said collision, Alma Harris suffered the following injuries all of which were permanent and progressive and all of which caused Alma Harris to suffer excruciating pain and suffering and caused her much mental anguish [description of injuries omitted], and that said injuries caused her to be hospitalized from July 31, 1959 to the date of her death."

Thereafter, defendant Goggins filed a motion to dismiss plaintiff's petition in which he alleged that theretofore, on November 23, 1959, Clifford Harris, the surviving husband of decedent, had filed a petition against

these defendants seeking damages in the amount of $25,000 for the wrongful death of his wife; that the cause was tried before a jury on the 18th and 19th days of July, 1960, and that after all the evidence was closed, but prior to submission to the jury, the parties settled said action; that a stipulation for dismissal with prejudice was executed by plaintiff's attorneys and that said plaintiff executed a release to all of the defendants; that said cause was dismissed with prejudice in accordance with said stipulation, and that defendant Goggins paid said plaintiff the sum of $5,125 and plaintiff agreed that the largest item of medical expense, i. e., $2,000 owed the Bonne Terre Hospital, would be paid out of that settlement. Said motion then alleged a number of reasons why the settlement with decedent's husband was res judicata and precluded this plaintiff from maintaining the present action. Said motion also alleged "that the plaintiff has not set forth facts in his petition which would entitle him to the relief prayed for therein." All of the other defendants filed similar motions with the exception that the amounts alleged to have been paid in settlement were, by defendants Charles Louis Woodruff et al., $1,125, and defendants Raymond Caldwell et al., $750. These motions were heard on January 6, 1961, and evidence offered in support thereof, and were on January 11, 1961, overruled by the trial court. Allegations similar to those contained in the motions to dismiss were included in the various answers filed by the defendants. Also, on the day the trial commenced, each of the defendants re-offered their motions to dismiss plaintiff's petition and same were overruled by the court.

At the conclusion of all of the evidence defendants again offered the record evidence which had been previously submitted to the court in support of their respective motions to dismiss plaintiff's petition and the offer was denied by the court. Thereafter, all of the defendants filed motions for a directed verdict, and in the motion of defendant Goggins, and also the joint motion of Charles Louis Woodruff et al., one of the grounds stated in support of said motions was that plaintiff's petition failed to allege facts upon which relief could be granted.

The two main points raised by appellant Goggins upon appeal were: (1) "The judgment of the circuit court in the prior case of Clifford Harris against the same defendants for the wrongful death of his wife acted as a bar by reason of appropriation, estoppel, merger and res adjudicata to the bringing and prosecution of the instant case, and the court erred in failing to sustain the defendant's motion to dismiss plaintiff's petition, renewed during the course of the trial and again set forth in the after-trial motion," and (2) "plaintiff's petition failed to state facts which would entitle him to the relief prayed for therein, in that he did not allege that the deceased received injuries which did not result in her death and the court erred in failing to sustain defendant Goggins' motion to dismiss, renewed in the answer, renewed before the introduction of evidence, again renewed in the motion for directed verdict at the close of all the evidence, and again renewed in the after-trial motion."

The court of appeals in its opinion, relying primarily upon the case of Plaza Express Co. v. Galloway, 365 Mo. 166, 280 S.W.2d 17, held that the plaintiff administrator was not barred from maintaining this action by reason of the settlement and judgment in the action theretofore instituted by the surviving husband of the deceased. The court, however, was of the opinion that it was essential to plaintiff's cause of action to allege that decedent did not die as the result of the injuries received in the collision and that, since that allegation was omitted from plaintiff's petition, the judgment against Goggins should be reversed and the cause remanded for further proceedings, as heretofore indicated.

Plaintiff, in his appeal from the judgment in favor of the other defendants, complained of the giving of a number of instructions. All of those were held by the

court of appeals not to be prejudicially erroneous and therefore, as heretofore stated, the judgment as to all of the defendants, other than Goggins, was affirmed.

After the instant case was transferred to this court defendants Caldwell filed a motion seeking an order dismissing them "as parties to this appeal" in this court. The motion was based upon the grounds that (1) since no motion for rehearing or to transfer was filed by plaintiff seeking relief from the affirmance of his appeal, the judgment became final fifteen days after the opinion was filed, i. e., January 3, 1963, and (2) the issue which caused the court of appeals to transfer this case related only to the appeal of appellant Goggins. We heretofore ordered that motion taken with the case and we will now determine the merits thereof.

■ Article 5, Section 10, Constitution of Missouri, V.A.M.S., provides, in part, that "[c]ases pending in any court of appeals * * * may, after opinion, be transferred to the supreme court by order of either the court of appeals or the supreme court because of the general interest or importance of a question involved in the case, or for the purpose of re-examining the existing law, or pursuant to supreme court rule. The supreme court may finally determine all causes coming to it from any court of appeals * * * the same as an original appeal." The procedure for transfers under quoted section 10 is prescribed in Civil Rule 84.05, V.A.M.R. Subsection (g) thereof provides that "[a] court of appeals at any time within fifteen days after adopting an opinion, if no motion for rehearing or transfer is filed, or at any time during the pendency of such motion, may on its own motion order a case transferred to the Supreme Court in accordance with Section 10 of Article V of the Constitution."

It will be remembered that the opinion of the court of appeals, in disposing of plaintiff's appeal, affirmed the judgment in favor of all the defendants except Goggins.

Certainly, by failing to file a motion for rehearing or to transfer within fifteen days, plaintiff abandoned any effort to obtain a rehearing or any further review of the points raised by him on the appeal. Without any motion being filed the court of appeals could have transferred the case to this court, on its own motion, within fifteen days, but it did not do so. While this was one case in the court of appeals, it involved two appeals. We have concluded that when plaintiff failed to file a motion for rehearing or to transfer within fifteen days, and the court did not, of its own motion, transfer the case within that period of time, the determination of the issues raised on plaintiff's appeal became final. We think it would be unreasonable to construe Civil Rule 84.05(g) as providing that a motion for rehearing or to transfer filed by one appellant would extend the period during which the court could, of its own motion, transfer the whole case to this court. The result of such a construction would be to hold that a motion by one appellant would postpone the finality of a judgment in favor of other parties as to whom no motion had been filed.

■ We are aware of the well-settled general rule to the effect that separate appeals must be disposed of by one appellate court, since they constitute but one case on appeal. See cases cited in Feste v. Newman, Mo.Sup., 368 S.W.2d 713, at page 719. However, we think the one-case rule was satisfied when the court of appeals filed its opinion which disposed of both appeals. Thereafter, as heretofore stated, the judgment relating to plaintiff's appeal became final and the court of appeals properly transferred the case to this court for a review of the issues disposed of on the appeal of defendant Goggins. That the one-case rule has its exceptions is demonstrated by the case of Feste v. Newman, supra. In that case plaintiff sought to recover damages in the sum of $50,000 from two defendants. At the trial plaintiff obtained a judgment for $10,000 against de-

fendant Denton but the verdict was in favor of defendant Newman. Plaintiff appealed from the Newman judgment and Denton appealed from the judgment against her. The supreme court held that plaintiff abandoned any contention of error upon her appeal by failing to present any assignment in her brief, and her appeal was dismissed. Since the appeal of Denton involved only $10,000, it was held that we had lost appellate jurisdiction, and the case, which then involved only her appeal, was transferred to the St. Louis Court of Appeals.

For the reasons heretofore stated, we have concluded that no issue relating to plaintiff's appeal is before us for review and therefore the motion under consideration should be and is sustained.

We will first consider the point upon which the court of appeals reversed plaintiff's judgment and remanded the cause. That contention of defendant Goggins is that plaintiff's petition did not state a claim upon which relief could be granted because it failed to allege that decedent received injuries which did not result in her death. There can be no question but that the petition failed to contain that specific allegation and it further appears that such is an essential element of plaintiff's claim in an action of this nature. Plaintiff's claim is founded upon Section 537.020 (statutory references herein are to RSMo 1959, V.A.M.S.) which provides, in part, as follows: "1. Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, * * * [but] shall survive to the personal representative of such injured party * * *." The Plaza Express case, supra, which involved facts generally similar to those in the case before us, in construing the foregoing statute, stated that an "essential element of the administrator's claim, one which he must allege and prove, is that the injuries sustained by deceased did not result in deceased's death." 280 S.W.2d 1. c. 22.

■ Plaintiff has briefed the point, however, that his failure to allege that deceased did not die as a result of the injuries will not require a reversal because that issue was tried with the implied consent of the parties. Civil Rule 55.54, V.A.M.R., provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

There can be no question but that the issue under consideration was actually tried in this case. The two physicians who testified in the case each expressed the opinion (without objection on the ground that it was beyond the scope of the pleadings) that decedent did not die from the injuries received in the collision but died as a result of the cancer. Plaintiff's verdict-directing instruction relating to defendant Goggins required the following finding: "further find that as a result of said collision, Alma Harris, sustained injuries, and that such injuries neither caused nor contributed to cause her death * * *." Also, at the request of the defendants the court gave Instruction No. 13 which was a converse of the portion of the instruction just quoted.

In construing Civil Rule 55.54, and similar provisions in Section 509.500, the cases have consistently held that failure to object to testimony on an issue not pleaded will warrant an inference that the issue is being tried with the implied consent of the parties and the issue is thereafter treated as if it had been raised in the pleadings. Evett v. Corbin, Mo.Sup., 305 S.W.2d 469; Dickerson v. Terminal R. Ass'n of St. Louis, Mo.Sup., 284 S.W.2d 568; Gooch v. Avsco, Incorporated, Mo.Sup., 340 S.W.2d 665.

In the situation presented, we are of the opinion that plaintiff's petition should be considered as having been amended to conform to the proof in regard to the issue concerning the cause of decedent's death. In reaching that conclusion we are not unmindful that defendant Goggins, in a pre-

trial motion to dismiss, included (among many others) a general assignment "that the plaintiff has not set forth facts in his petition which would entitle him to the relief prayed for therein." In that connection it should be noted that said defendant did not at any time prior to the motion for new trial make any specific objection to the effect that the petition was deficient in failing to allege that decedent did not die as a result of the injuries complained of. As stated, that issue was actually tried. In the situation presented, the fact that the pretrial motion was filed and overruled would not preclude the application of the rule heretofore stated concerning failure to object to testimony on an issue not pleaded. If defendant had desired to restrict the trial to the issues pleaded he should have made an appropriate objection to evidence which was beyond the scope of plaintiff's petition.

█ We will next consider the point which caused the court of appeals to transfer the case here. That is the contention that plaintiff is barred from recovery in this case because his father, as surviving spouse, settled the previous death action. We fully agree with the decision of the court of appeals to the effect that the aforementioned settlement did not bar the plaintiff from a recovery herein.

The wrongful death statute provides that "[w]henever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, which damages may be sued for and recovered (1) By the husband or wife of the deceased; * * *." Section 537.080. The applicable portions of the statute relating to causes of action not re-

sulting in death have been heretofore quoted. See Section 537.020, supra.

The Plaza Express case involved a situation very similar to the one before us except that decedent therein had filed a suit to recover damages for his injuries prior to his death. It was revived in the name of his administrator, Randel E. Galloway. The decedent's widow also brought a suit to recover for his alleged wrongful death. The defendants in those suits (in an effort to avoid double liability) brought an action to require the widow and administrator to interplead in order to determine which was entitled to recover. In construing the aforementioned statutes, we said:

"It follows that, at the instant of Bert Galloway's death, a claim for damages for the personal injuries he received in the June 1951 collision between his automobile and defendants' truck survived to his administrator if, but only if, the injuries received as a result of the collision *did not* result in Bert Galloway's death. It also follows that a claim or cause of action for Bert Galloway's wrongful death accrued to his widow if, but only if, those same injuries received at the same time *did* result in Bert Galloway's death. There was at this death only one claim in existence. It was either the same claim for damages which Bert Galloway had in his lifetime or it was a new claim which accrued to his widow upon his death. Both claims could not and did not exist. Which of the two did exist depends upon a determination of the fact issue of whether the injuries Bert Galloway received did or did not cause his death. * * * Both the administrator and the widow are (unless plaintiffs may obtain relief in their present action) entitled to proceed with their respective separate claims and, not only may each separately proceed but, unless a judgment for plaintiff in either of those actions would be res judicata of the other action, each may recover and be entitled to have satisfied his or her separate judgment. * * *

"We therefore treat instant facts as presenting a situation wherein the widow and the administrator are different persons and the beneficiary of the two actions is not the same person. Under these facts, we are aware of no principle, and none has been pointed out, in the doctrine of res judicata by which a judgment in either of the pending damage actions would bar the other, or by which either party-plaintiff would be estopped by a verdict or judgment in the other case as to any fact issue litigated in such other case. Specifically, if the widow recovered a judgment in her action, or if the administrator recovered a judgment in his action, even though the fact issue in each action as to whether deceased's injuries did or did not result in his death would have been litigated and determined, the judgment in neither action would bar the maintenance of the other, nor would the widow or the administrator be bound in her or his respective action by the determination of such fact issue in the other action. This, because the widow and administrator are different persons and are not in privity with each other. Their interests are necessarily adverse." 280 S. W.2d 1. c. 22, 23.

It is our view that the opinion in the Plaza Express case is decisive of the issue presented here. We have carefully re-examined that case and remain of the opinion that the reasoning in the foregoing quotation therefrom is sound.

Defendant (the use of the word "defendant" hereinafter refers to defendant Goggins) has filed a supplemental brief in which he contends that Clifford Harris is actually the only person who will benefit from the judgment in the instant case, and for that reason plaintiff administrator should not be permitted to recover herein. That contention is based upon speculation. Under Section 474.010, decedent's son will receive one half of her estate. The fact that the widower may receive certain personal property under Section 474.250, and

an allowance of a reasonable amount for a year's maintenance under Section 474.260, in addition to one half of the estate, does not establish that he will be the sole beneficiary of any amount that may be recovered in this action. That contention is without merit.

Defendant also contends that in enacting Sections 537.020 and 537.080, the legislature did not intend that the surviving spouse and the administrator could both recover and therefore we should hold that when one has appropriated and settled his claim the other is barred from recovery. We agree that the legislature intended only one recovery. The difficulty, however, is that it did not prescribe any procedure whereby it could be determined which should be the one to recover. Defendant apparently overlooks the fact that in many cases there may be an honest bona fide dispute between the surviving spouse and the administrator as to whether deceased died as a result of the injuries. In that situation an alleged tort-feasor should take timely action to protect himself. If he desires to make a settlement he should obtain a release from both. If he cannot obtain the releases, or if he does not want to settle the case, he can resort to the procedure followed in Plaza Express. There may also be other ways he may obtain protection. In any event, the instant contention does not change our previously expressed conclusion and it is overruled.

We will next consider certain contentions of defendant concerning alleged trial errors. He first asserts that the court erred in permitting plaintiff to ask Dr. Huckstep concerning pain suffered by decedent "by reason of injuries or the aggravation of any condition she was suffering with" because plaintiff had not pleaded aggravation of a pre-existing condition. Defendant evidently misconstrued the question. Dr. Huckstep was asked about "the aggravation of any condition she was suf-

fering from as a result of that accident." While that is a rather unusual question it was certainly not error to describe the subsequent condition of decedent in regard to injuries received in the collision.

■ The next contention relates to the following question and answer in Dr. Huckstep's deposition: "Q. Did her inability to void immediately following this accident cause you to form any opinion of the possible injury she may have suffered at the time of the accident? A. I felt that the injury produced further nervous damage which resulted in the use of the urinary catheter." Defendant objected to the form of the question and also that the answer was not responsive. He has now briefed the point that the court erred in permitting that testimony to be read to the jury because the question and answer indicate that it is not based upon a reasonable medical certainty but on a mere possibility. The point briefed is not before us because that ground was not included in the objection presented to the trial court.

■ Defendant has also raised the point that the court erred in admitting the following recital in the admission note of the Bonne Terre Hospital record: "At the time of her accident on the way home, she was in the ambulance and although she was apparently not thrown from the stretcher, she was bounced around inside the ambulance and developed back pain." The objection was that the recital constituted hearsay. We have decided that we need not determine the admissibility of that record because, in any event, it would not have been prejudicial. This for the reason that those facts were fully established by the testimony of decedent's husband and daughter-in-law. See Hunter v. St. Louis-Southwestern Railway Co., Mo.Sup., 315 S.W.2d 689[5]. Note the testimony of Mrs. Clyde Harris who was riding in the ambulance: "Q. And could you tell us what occurred at the time of that collision, insofar as Mrs. Harris was concerned? A. Well, she had scooted down on the cot to where her head was just about where the buttocks were and her legs from her hips on down were leaning over the side of the cot, just angling off at the side. Q. And that occurred right at the time of impact? A. Yes. Q. And how long—did Mrs. Harris say anything? A. She started to say, 'Oh my back hurts.' And she continued saying that and she finally was in tears."

■ Defendant's next point relates to the testimony of Dr. Robert L. Lam who testified as an expert for plaintiff. He stated that he had never seen decedent, but had examined the records of the Bonne Terre Hospital and of Barnes Hospital which related to her. These records were admitted in evidence in their entirety. When Dr. Lam was asked to state various opinions based upon those records, defendant made the general objection that such was improper because based on hearsay. Other hypothetical questions based upon these records (some of which were supplemented by hypothesized facts based upon testimony) were objected to on the ground they were not based upon facts in evidence. We rule this point against defendant. These hospital records were all admitted in evidence. That being true, we think they may be properly considered by the witness as a basis for opinion testimony. Wojciechowski v. Coryell, Mo. App., 217 S.W. 638. Since the records had been admitted in evidence we do not consider that it is an effective objection to say that they are hearsay. All of the facts considered by this witness were in evidence. We assume that defendant's suggestion to the contrary was based upon the fact that most of the hospital records, although admitted, were not read to the jury. They were, nevertheless, in evidence, and could be used to form the basis for expert testimony.

■ Another point briefed by defendant is that the court erred "in admitting evidence before the jury over the objection of the defendants to the effect that the

deceased Mrs. Harris hoped to go home and see her grandchildren and that the children were not allowed to visit Mrs. Harris when she was in the hospital for the reason that evidence with regard to the composition of the family of the deceased was inadmissible and was given for the purpose of soliciting the sympathy of the jury." Defendant has cited the case of Heibel v. Robison, Mo.App., 316 S.W. 2d 238, wherein it was held to be error to permit a plaintiff to testify that he had eight children. In the case before us there was no objection to the testimony that decedent had hoped to go home and see her grandchildren. Her son Clyde was permitted to testify, over objection, that (although they were under visitation age) the hospital would "now and then" permit his children to see her. We do not think the rule defendant relies upon is applicable in the situation here involved. This situation related to grandchildren where no question of support was involved. While the question as to whether the hospital would or would not permit the grandchildren to visit decedent was not strictly relevant, we are convinced that no prejudicial error resulted from the admission of that testimony.

■■■■ Clifford Harris, decedent's widower, testified briefly concerning the collision and his wife's condition and progress while in the two hospitals. Upon his cross-examination defendant sought to show that the witness had filed suit against defendants in the wrongful death action and had received $7,000 in settlement thereof. We think the court properly sustained an objection to that evidence. It would not have tended to impeach the witness. That case was concluded and there was nothing inconsistent between his testimony in this case and the position he took in the previous case. The court properly permitted defendant to show that the witness was an heir to his wife's estate and thus had a financial interest in the case. We rule this contention against defendant.

Defendant contends that the court erred in giving Instruction No. 1 because it required the jury to find that "Alma Harris sustained injuries, and that such injuries neither caused nor contributed to cause her death," because such was beyond the scope of the pleadings. This contention is controlled by our decision heretofore in regard to the sufficiency of the petition. It is accordingly overruled.

■■■ The final point briefed by defendant is that the court erred in giving, at plaintiff's request, Instruction No. 7 which reads as follows: "The court instructs the jury that if you find the issues in favor of plaintiff Clyde Harris, Administrator of the Estate of Alma Harris, then you should assess his damage at such sum as you may find and believe from the evidence would have fairly and reasonably compensated Alma Harris for her injuries, if any, she sustained as a direct and proximate result of the negligence of the defendant or defendants against whom you find, if any, at the time and place mentioned in the evidence, and in this connection you are instructed that you may consider such pain and suffering of body and mind, if any, that Alma Harris suffered by reason and on account of her injuries, if any, suffered in the collision in question." He says the instruction is erroneous in not limiting the damages to the space of time between the date of injury and date of death. Under the circumstances of this case, we are confident the instruction would not have been misunderstood by the jury. The main element of damages in this case was pain and suffering and such could occur only between the date of injury and date of death. The cases cited by defendant, Showen v. Metropolitan St. Ry. Co., 191 Mo.App. 292, 177 S.W. 791, and Adelsberger v. Sheehy, 336 Mo. 497, 79 S.W. 2d 109, are not applicable here. Those cases involved issues such as permanent injuries and loss of wages, which, it was thought, the jury might allow damages for during the period of the life ex-

pectancy of deceased. We rule this contention against defendant.

The judgment in favor of plaintiff and against defendant Goggins is affirmed.

All concur.