Curtis Ceil THOMAS,
Plaintiff-Appellant-Respondent,

v.

Ivan MYERS, M.D.,
Defendant-Appellant-Respondent.

Nos. 43726, 43727.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 21, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 1983.

James F. Koester, St. Louis, for Curtis
Ceil Thomas.

Robert W. Freeman, Ken D. Rogers,
Freeman, Fredrick, Bennett & Rogers, P.C.,
Springfield, for Ivan Myers, M.D.

SATZ, Judge.

This is a medical malpractice case. De-
fendant Dr. Ivan Myer, is a doctor specializ-

ing in obstetrics and gynecology. In September, 1978, defendant was to perform a bilateral ovarian removal on plaintiff, Curtis Ceil Thomas. Defendant told plaintiff he was going to remove both her right and left ovaries and any accessory ovarian material present. According to defendant and the pathology lab report, defendant removed plaintiff's left and right ovaries and her left and right fallopian tubes. Six months later in March, 1979, plaintiff was admitted to the emergency room at Deaconess Hospital complaining of severe pain on the left side of her back. Several days later, Dr. Dwayne Bergmann, a urologist, performed exploratory surgery on plaintiff and removed a large mass of ovarian material which was tightly bound to the left ureter.[1] This mass was constricting plaintiff's urine flow and, thus caused the pain. Dr. Bergmann called in Dr. Seth Wissner, an obstetrician and gynecologist, to assist in the removal of this mass. At that time, both doctors thought this mass was the left ovary. According to Dr. Bergmann, plaintiff's expert witness, the pathology lab report confirmed the mass was the left ovary. Dr. Bergmann also testified, however, that the mass was found "retroperitoneal," i.e., behind the peritoneal cavity, and ovaries are normally located inside the peritoneal cavity.[2]

Plaintiff sued defendant for negligence, alleging defendant failed "to remove the ovary[3] in accordance with his representation and alleged intention." A jury returned a verdict in favor of plaintiff for $32,000, and judgment was entered accord-

ingly. The court denied defendant's motion for judgment in accord with his motion for directed verdict. The court, however, sustained defendant's motion for new trial and ordered a new trial. Plaintiff appeals from the grant of a new trial, and defendant cross appeals from the denial of his motion for judgment in accord with his motion for a directed verdict. These appeals have been consolidated. We reverse the trial court's denial of defendant's after trial motion for judgment and order the trial court to enter judgment in favor of defendant in accord with his motion for directed verdict.

The trial court sustained defendant's motion for a new trial on three grounds. For our purposes, only the first ground need be considered.[4] For its first ground, the trial court stated:

"1. The Court erred in allowing Dr. Bergmann to testify by deposition in response to a hypothetical question which in part was based on an assumed fact never admitted into evidence[:] Assume that the defendant 'did not check' the pelvic area."

Defendant argues this ground is sufficient basis for the grant of a judgment in his favor. In support of this contention, defendant makes the following more specific arguments. In medical malpractice cases, the plaintiff bears the burden to prove the defendant's actions fell below the standard of skill and care exercised by the ordinarily careful and prudent physician, e.g., *Williams v. Chamberlain,* 316 S.W.2d 505, 510 (Mo.1958). With few exceptions not perti-

1. Dr. Bergmann testified by deposition.

2. The peritoneal cavity is covered by a membrane which, according to Dr. Bergmann, is one to two millimeters thick. According to Dr. Bergmann's testimony, then, the ovarian mass must have been behind this membrane.

3. In her pleading, plaintiff alleges defendant failed to remove "the ovary" but does not specify which ovary. However, plaintiff also alleges this ovary obstructed the *left* kidney. From this, we infer plaintiff alleges that defendant failed to remove the *left ovary.*

4. The other two grounds are:
"2. The Court erred in giving Instruction No. 9 in that it misdirected the jury by direct-

ing: 'Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of *the whole jury* to an agreement upon a verdict.' This was in direct conflict with Instruction No. 8 which directed that only nine of their number was necessary for a verdict.

3. Looking at the evidence in a light most favorable to plaintiff the evidence was insufficient to establish the size of the ovarian mass at the time of defendant's operation therefore whether or not it was discoverable under all the circumstances."

nent here, this fact must be proved by expert medical testimony "'otherwise a jury may not know (or guess) whether the defendant's acts did or did not conform to the required standards.'" *Hart v. Steele,* 416 S.W.2d 927, 931 (Mo.1967). In the instant case, plaintiff's proof of negligence rested upon the answer to a hypothetical question which assumed a fact not in evidence. This defect in the hypothetical question vitiated the probative effect of the answer and, thus, precluded plaintiff from making a submissible case. We agree.

As noted, plaintiff alleged that defendant was negligent because he failed "to remove the ovary in accordance with his representation and alleged intention." Plaintiff's submitted theory of negligence, however, was broader and more inclusive. Plaintiff's verdict directing instruction permitted the jury to determine whether defendant was negligent if he "failed to remove *all the ovarian material* on the left side" during the first operation.[5] To support her theory, plaintiff posed the following hypothetical question to her medical expert, Dr. Bergmann:

"Q. Assuming that a doctor does a tube and ovary removal and he does not do what you said he should do and what you advise and what should be done, in other words, *he does not check* to see whether there's a growth or cyst or ovary or injury in the area of the urinary tract,

then under those circumstances with that assumption that *he did not check,* is that a failure to check to determine to discover those things I have described a failure to exercise that degree of skill, care and proficiency that is ordinarily exercised by an ordinarily careful and prudent physician under the same or similar circumstances?" [Emphasis added].

Dr. Bergmann answered: "Yes." In short, according to Dr. Bergmann, defendant was negligent because he "did not check" the surgical area in question.

A hypothetical question must be predicated on facts in evidence and must not assume facts not in evidence. *Garrett v. Joseph Schlitz Brewing Co.,* 631 S.W.2d 652, 654 (Mo.App.1982). However, rational inferences of fact drawn from direct evidence may form a sufficient basis for a hypothetical question. *Winters v. Sears, Roebuck & Co.,* 554 S.W.2d 565, 573 (Mo. App.1977). Plaintiff apparently assumes there was no direct evidence that defendant "did not check" the surgical area in question,[6] for plaintiff contends that circumstantial evidence establishes this fact. During redirect examination, Dr. Bergmann testified, "with reasonable medical certainty," the ovarian mass removed during the second operation was "palpable" at the time of the first operation,[7] although he could

5. Dr. Wissner, the obstetrician-gynecologist who assisted Dr. Bergmann during the second operation, was called as a witness for defendant. Dr. Wissner testified that, upon reflection, he believed the mass removed during the second operation was a supernumerary ovary; i.e., a third ovary formed by ovarian cells which migrated from the normal ovaries. Plaintiff's submission of the failure to remove *all* ovarian material on the left side includes the failure to remove a supernumerary ovary. This submission is broader than plaintiff's allegation of failure to remove "the [left] ovary." However, the propriety of plaintiff's submitting a theory of negligence broader than the theory pleaded is not before this Court.

Also, the question of whether plaintiff's verdict directing instruction submitted sufficient ultimate facts to define plaintiff's precise theory of negligence is not before this Court.

6. As part of plaintiff's case, plaintiff read the following answer of defendant from defendant's deposition:

"Q When you visualize [sic] her ovaries did you see any additional ovary material?
A We explored her pelvis and there was no other abnormality, we followed her with pelvic exams after that and *didn't feel anything either.*" [Emphasis added].
If plaintiff's theory of negligence was that defendant "did not check" the surgical area in question, the purpose of reading into evidence this "admission" from defendant's deposition is unclear.

7. As noted, defendant operated on plaintiff six months before Dr. Bergmann performed his operation. On redirect examination, Dr. Bergmann testified:

"Q Could [the ovarian mass] have been felt seven months before [your operation]?
A Could it have been?
Q Yes, sir.
A Yes, I feel it could have been felt.
Q Is that your opinion based upon reasonable medical certainty?

not estimate the size of the mass at the time of the first operation. If the mass was "palpable" and defendant failed to find it, plaintiff argues, it must be inferred that defendant "did not check" the surgical area in question. This inference, plaintiff reasons, provides sufficient proof for the assumption that defendant "did not check."

We find plaintiff's logic questionable, at best.[8] We need not, however, discuss this reasoning of plaintiff. The keystone of plaintiff's argument rests on the proof that the ovarian mass was palpable at the time of the first operation. Admittedly, on redirect examination, Dr. Bergmann testified that the mass was palpable. On his recross examination, however, he directly contradicted his redirect testimony and, thus, vitiated the probative effect of his redirect testimony. Because Dr. Bergmann's testimony on recross examination is critical, we quote the pertinent part in detail:

### "RE–CROSS EXAMINATION

Q Doctor, you just testified that in your opinion that it could have been felt?

A Yes.

Q Do you have an opinion, Doctor, as to whether or not in doing a hysterectomy at that time and the feeling of it would have caused whoever was doing the hysterectomy to have gone into surgery? Do you know what size it would be to let you make that type of determination?

A No.

Q Is there anything that a surgeon might feel when he's doing an operation which would not necessarily cause him to do further surgery or know that an injury or further surgery was necessary?

A Sure.

Q Could this be one of those things?

A Yes.

Q It could be?

A Yes.

Q So, you're not saying that as a matter of reasonable medical certainty that when Dr. Myers did this previous operation that he should have or could have felt a mass that would have made him conclude that further surgery was necessary; are you?

A I think I specifically testified to the fact that it would be advisable to check the urinary tract to see the injury or other obstruction, but I didn't say he had not done that, because I don't know.

Q *And even if he had I am not certain that he did or not, but let's say he did, and if he had of checked it, you are not certain that he would have discovered this; are you?*

A *No.*

Q *And it is not your opinion that he would be negligent for failing to discover this mass; is it?*

A *No.*" [Emphasis added].

Whether cursorily read or carefully parsed by a secular exegesis, the sensible meaning of Dr. Bergmann's testimony on recross examination remains the same. It contradicts his redirect testimony that the ovarian mass in question was palpable at

A I feel it could have been felt.
Q Is that your opinion based upon reasonable medical certainty?
A Yes."

8. Proof that the ovarian mass was palpable at the time defendant operated and that the mass was not removed would give rise to, at least, two equally probable inferred facts: (1) defendant "did not check" the surgical area in question, or, (2) defendant "checked" the area using a faulty technique. Facts assumed in a hypothetical question must be supported by substantial evidence. *E.g., Heppner v. Atchison, Topeka and Santa Fe Railway Co.,* 297 S.W.2d 497, 506 (Mo.1956); *Pettis v. St. Louis Public Service Co.,* 240 S.W.2d 909, 912 (Mo.1951); *See also Conlon v. Roeder,* 418 S.W.2d 152, 157 (Mo.1967); *But see, Fullerton v. Fordyce,* 144 Mo. 519, 44 S.W. 1053, 1056 (1897); *Russ v. Wabash Western Ry. Co.,* 112 Mo. 45, 20 S.W. 472, 473 (1892) (any fact which the evidence *tends* to prove may be assumed in a hypothetical question). Proof of facts which give rise to two equally probable inferred facts, as in the instant case, is not the substantial evidence needed to support either one of the inferred facts.

the time of the first operation. Plaintiff's proof of this keystone fact and, in turn, plaintiff's proof of negligence rest solely upon this contradictory testimony of Dr. Bergmann. The contradictory testimony of a single witness relied upon to prove a fact does not constitute substantial evidence and is not probative of that fact in absence of an explanation tending to explain the contradiction. *Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644, 647 (1933); [9] *Griggs v. A.B. Chance Company*, 503 S.W.2d 697, 703–704 (Mo.App.1973); *See, e.g., Stephens v. Thompson*, 293 S.W.2d 392, 394 (Mo.1956). Naturally, if other facts or circumstances explain the contradictory statements of the witness, the jury would have to determine which version should be accepted as true. *Morgan v. Krey Packing ·Company*, 454 S.W.2d 939, 941 (Mo.App.1970); *Pate v. St. Louis Independent Packing Company*, 428 S.W.2d 744, 752–753 (Mo.App.1968). We have carefully studied Dr. Bergmann's entire testimony, as well as the testimony of plaintiff herself, and we find no sensible explanation for Dr. Bergmann's contradictory testimony. Thus, Dr. Bergmann's testimony provides no probative proof that the ovarian mass was palpable at the time of the first operation. Without this proof, plaintiff fails to make a submissible case of negligence against defendant. Therefore, judgment must be entered in favor of defendant.

Accordingly, we vacate the order of the trial court granting plaintiff a new trial and we reverse the trial court's denial of defendant's after trial motion for judgment in accord with his motion for directed verdict. We remand the cause and direct the trial court to enter judgment in favor of defendant in accord with his motion for a directed verdict.

SMITH, P.J., and PUDLOWSKI, J., concur.

9. This case was reversed and remanded. An appeal from the new trial is recorded at 336

Mo. 497, 79 S.W.2d 109 (Mo.1934).