Jacob **SILBERSTEIN**, Appellant,

v.

Irvin I. **BERWALD**, M.D., Respondent.

No. 54095.

Supreme Court of Missouri,
Division No. 2.

Nov. 9, 1970.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 14, 1970.

James B. Herd and Deeba, DeStefano, Sauter & Herd, St. Louis, for appellant.

Norris H. Allen, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for respondent.

ROBERT C. J. HOESTER, Special Judge.

Plaintiff sued for medical malpractice for failure to diagnose an inspissated barium bolus and failure to diagnose the existence of a tumor, cancer of the rectal-sigmoid and for failure to diagnose the perforation of the deceased's bowel, lower intestine, and colon. At the conclusion of plaintiff's evidence, the Court sustained a directed verdict from which plaintiff appeals.

Plaintiff's motion for new trial contained several allegations of error, including evidentiary questions. Plaintiff claims he made a submissible case in regard to the only point he briefed and argued, which was

"That the defendant failed to discover and treat a massive impaction of barium in the colon of the deceased and that defendant's failure contributed to cause her death."

The Court will review only that point preserved and briefed by plaintiff.

We must review the evidence giving plaintiff the benefit of every inference and consider it in a light most favorable to the plaintiff. Steele v. Woods, Mo., 327 S.W. 2d 187, and Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc., Mo.App., 402 S.W.2d 49. The facts most favorable to plaintiff are uncontroverted. Bessie Silberstein, a 67-year-old woman, weighed 245 pounds a year prior to her death, and was five feet tall. She was under the care of the defendant, Dr. Irvin I. Berwald, who was treating her for her obese condition and a pain in the abdomen. She entered Faith Hospital September 15, 1965 with complaints of severe pain in the abdomen, pain in the bowels, and constipation. She was given both upper and lower gastro-intestinal series which included the administration of substantial quantities of barium. An ulcer of the prepyloric segment of the stomach was diagnosed and treated. The treatment also consisted of several other ingestions, both orally and rectally, of barium for the purpose of x rays. On October 1, 1965, deceased's ulcer was found to be completely healed without residual deformity.

Within days of her admission and after the first barium, the evidence shows that she began passing rectally, white rocks. Several days after her release, the deceased pulled chunks of white hardened rock from her rectum, one of which was the size of a silver dollar. On October 15, 1965, the deceased returned to Dr. Berwald's office where he felt a mass after having palpated the abdomen of deceased. She was transferred to the care of a Dr. Samuel Soule who was a gynecologist. Three days after her consultation with Dr. Soule, she was seen by Dr. Murray Chinsky, an internist, and was admitted to Jewish Hospital on an emergency basis. The hospital records indicate that three large scybala of hardened barium were manually removed from her rectum. They were smaller than a lemon, about the size of a silver dollar.

Exploratory surgery was performed October 29, 1965, at which time a large 7 x 5 centimeter bolus of barium was found in the colon which had caused necrosis of the bowel wall and had perforated the bowel. The fecal bolus completely obstructed the lumen of the colon. The area was inflamed with peritonitis present. Twelve centimeters from the location of the barium bolus, the surgeon found cancer of the sigmoid colon. The cancer of the colon completely encircled the interior of the colon and obstructed the passage. The surgeon

performed a colostomy, removed approximately ten inches of the colon, as well as the barium bolus, removed that area which was cancerous and that area which was perforated and necrotic where the barium bolus was located. The patient did not respond satisfactorily and a second operation was performed, at which time the surgeon discovered that the colostomy operation had failed, that the patient had gangrene, and he removed the gangrenous segment of the colon and performed another colostomy of the colon. Shortly after, on November 11, 1965, the patient died.

The death certificate listed the immediate cause of death as peritonitis due to bowel resection due to perforation of the bowel by fecalith due to cancer of the rectal sigmoid. A postmortem was performed in which the pathologist listed a total of fifteen primary causes of death. The final anatomical diagnosis (the pathologist's report) listed in numerical order the following findings:

1. Infiltrating adenocarcinoma;

2. Obstructing fecal barium bolus;

3. Gangrene of the colon;

4. Peritonitis;

and thereafter, the remaining eleven other findings. Dr. Murray Chinsky, when asked to comment on this anatomical diagnosis and pathology report, was asked the following question and made the following answer:

"Q. Now, doctor, under the word 'primary' in the final anatomical diagnosis report, why are they listed there in that fashion? What is the reason for that?

"A. Because the pathologist believes these are the major factors leading to her death."

The only evidence that would remotely bear on the causal connection between the negligent act or omission is the answer given by Dr. Chinsky "because the patholo-gist believes these are the major factors leading to her death." Dr. Chinsky himself was not asked what the cause of death was. No other questions were asked of Dr. Chinsky in regard to the fourteen other findings in the pathologist's report nor was Dr. Soule, who testified by deposition, asked what the cause of death was nor was he asked to comment at all upon the final anatomical report.

 The defendant was required to use and exercise that degree of skill and proficiency which is commonly experienced by the ordinary, skillful, careful and prudent physician and surgeon engaged in the practice of medicine. This duty required that he give heed to symptoms *subsequent* to an operation or treatment, and give or prescribe such method of treatment which the situation demanded and as would commend itself to the ordinary, prudent, careful and skillful physician and surgeon. We also stated it is sufficient if there is substantial evidence which shows that the injury (death) is a natural and probable consequence of the negligent act or omission. Steele v. Woods, Mo., 327 S.W.2d 187, supra.

In Herke v. St. Louis & S. F. Ry. Co., 141 Mo.App. 613, 125 S.W. 822, this Court said if the death may have resulted from either of two causes, one of which the defendant would be liable for and the other he would not, plaintiff should show with reasonable certainty that the cause for which defendant is liable, produced death. Dr. Sachar, who was plaintiff's witness, and while he was a reluctant witness who did not respond to the subpoena and who only came to Court after threat of a bench warrant, testified that the barium bolus was not the cause of death. Dr. Sachar performed the surgery and specifically responded to questions relating to cause of death in the following fashion:

"Q. And it wouldn't make any difference where that obstruction occurred, that is, where it was, and when it was there, whether there

was a cancer or a polyp or anything else, it would occur and could occur independent of the obstruction itself, isn't that correct?

"A. Well, if I understand that question, this would not have occurred (the inspissated barium bolus) without the cancer, it makes a lot of difference when there is a cancer, if the cancer isn't there the bolus would have been washed out, if the cancer wasn't there."

Dr. Sachar, while not being questioned specifically about the fifteen findings in the pathology report and final anatomical diagnosis, made these responses to the following questions:

"Q. Doctor, when you referred yesterday to a fatal cancer, you referred to this woman dying of cancer?

"A. Yes.

"Q. Now you said the woman died of the cancer and not the bolus?

"A. Yes.

"Q. Did an obstruction of fecalith with inspissated barium bolus kill this woman?

"A. No."

Dr. Sachar, on redirect examination was questioned concerning the second item of the pathology and final anatomical report. The question was propounded by plaintiff's counsel in the following fashion:

"Q. So the obstructing filler material, the barium bolus, that was at least the cause, if not the entire cause of this woman's death, and that's a fair medical statement is it not?

"A. Well, it really isn't, because that would be what they (the pathologists) find and that doesn't mean cause, that means just what's present, not what caused death but what was present at the time of death."

Dr. Sachar, on cross-examination, then testified:

"Q. And she died of the surgery?

"A. Yes.

"Q. And she died because you operated on her and she got gangrene from this peritonitis from the gangrene?

"A. Yes, and a pulmonary emboli."

The rule is well settled that a party is bound by the uncontradicted testimony of his own witness. Reece v. Reed, Mo., 326 S.W.2d 67. Plaintiff's own witness states the cause of death to be cancer. He also states the death resulted from the surgery because of the cancer and he specifically denies that the barium bolus caused the death. The death certificate gives the cause of death as cancer—thus, there is nothing in the record that contradicts the evidence of Dr. Sachar, plaintiff's witness. Giving plaintiff the benefit of all the most favorable inferences, the record is devoid of any evidence which would causally connect the after-care treatment and the failure to diagnose the barium bolus with the cause of death.

The judgment of the trial court is therefore affirmed.

MORGAN, Acting P. J., and FINCH, J., concur.

DONNELLY, P. J., not sitting.