Billy Joe **GARRETT**, Appellant,

v.

**STATE** of Missouri, Respondent.

No. 14719.

Missouri Court of Appeals,
Southern District,
Division One.

March 23, 1987.

Kathleen Murphy Markie, Columbia, for appellant.

William L. Webster, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Billy Joe Garrett appeals from a judgment denying his motion per Rule 27.26, Missouri Rules of Criminal Procedure (16th ed. 1985), to vacate his conviction of arson in the second degree, for which he was sentenced as a persistent offender to ten years' imprisonment.

This is the third time the case has reached this court. It was first here on direct appeal of the conviction. On that occasion, it was remanded to the trial court with directions to correct an error in the judgment and sentence. *State v. Garrett*, 642 S.W.2d 378 (Mo.App.1982). The trial court, on remand, corrected the error, and Garrett appealed anew. That appeal resulted in an affirmance of the conviction. *State v. Garrett*, 682 S.W.2d 153 (Mo.App. 1984).

Garrett, henceforth referred to as "movant," then commenced the instant proceeding by filing a pro se motion to vacate the conviction in the circuit court, henceforth referred to as "the motion court." Counsel was appointed for movant, an amended motion to vacate was filed, and an evidentiary hearing was held. The motion court thereafter entered findings of fact, conclusions of law, and judgment denying the motion. This appeal followed.

Movant's conviction resulted from a jury trial at which he was represented by attorney W____. On this appeal, movant briefs one assignment of error, averring that he received ineffective assistance from W____. The point consists of two components, the first of which alleges that W____ was derelict in "failing to call two defense witnesses in the defense's case-in-chief, who could have impeached the testimony of the only prosecution witness placing movant at the residence he was charged with burning, which prejudiced movant's cause by unnecessarily limiting his defense to only alibi witnesses who were related to movant and preventing movant from proving another cause of the fire."

The evidence at movant's trial is synopsized in *Garrett*, 682 S.W.2d at 154–55, and we need not repeat it here. It is sufficient for the instant appeal to note that the structure movant was convicted of burning was a dwelling at 107 East Marshall in Charleston, owned by Albert C. Goodin. Movant resided there as a renter, along with the other members of his household: his wife, Linda, their three children, and Linda's two daughters by an earlier marriage, Tammy Lamb and Michelle Lamb.

Tammy was the key witness against movant. She testified that on the evening in question, she was baby-sitting at the residence of Charmane and Mike Rosson, across the street from 107 East Marshall. Tammy recounted that about 9:30 p.m., she looked toward 107 East Marshall and saw movant on the porch, smoking a cigarette. He then entered the house, walked through it, and came back outside. At that point, said Tammy, movant walked from the house, past the adjacent house (occupied by the landlord, Goodin), and "took off running around the corner." About five or ten minutes later, according to Tammy, 107 East Marshall "was in flames."

Tammy's cross-examination by W____ included this:

"Q Now, do you smoke cigarettes?

A No.

Q Have you ever? A No.

Q Are you sure? A Uh-huh.

. . . .

Q Now, did you ever talk to Mike Rosson after the fire that night, Charmane's husband?

A When he come back to pick Carlena [1]—well, when they come back after the fire, yes.

Q Did you talk to them that night?

---

1. The Rossons' daughter.

A   Yes.

Q   Did he ask where Billy Joe was?

A   No.

Q   He didn't?   A   No.

Q   You didn't answer he was in East Prairie?

A   No."

In an effort to establish an alibi for movant, W⎯⎯ called five witnesses,[2] one of whom was movant's mother, Louise Razor. After those witnesses testified, W⎯⎯ announced, "Your Honor, at this time the defense would rest."

The trial court thereupon declared a recess. During the recess, W⎯⎯ informed the trial court that he wanted to present two witnesses "to rebut what [Tammy] said."

A discussion ensued between the trial court, the prosecutor and W⎯⎯, during which the prosecutor objected to any evidence that would impeach Tammy Lamb because, said the prosecutor, when the defense rested, "I told the Lambs that they could leave, and they have gone back to Arkansas, so I have no way of getting them back here."[3]

The trial court denied W⎯⎯'s request. In an offer of proof, W⎯⎯ identified the witnesses he wanted to call as Mike Rosson and Lisa Razor. W⎯⎯ explained:

"... it is defendant's belief that if ... allowed to call Mike Rosson, he would testify that on the night in question, ... he returned home with his wife, Charmane Rosson, ... that he, in fact, spoke with Tammy Lamb. And upon inquiring as to the whereabouts of Billy Joe Garrett, she replied that he was, to her knowledge, in East Prairie.

The defense would also have called, had it been allowed, Lisa Razor, the daughter of Louise Razor. It is my expectation that she would have testified to the fact that Tammy Lamb does, in fact, smoke."

On the second appeal, the trial court's refusal to allow the two witnesses to testify was assigned as error, but the conten-

tion was rejected.   *Garrett*, 682 S.W.2d at 155–56.

At the evidentiary hearing in the motion court, movant testified, without objection by the State, that had Mike Rosson been permitted to testify at trial, Rosson would have testified "[t]hat he spoke with Tammy that night, I believe it was around nine o'clock, and he asked Tammy where I was at, and Tammy told him that I had been at town all day long, down at East Prairie." Movant was also asked, at the evidentiary hearing in the motion court, what Lisa Razor would have testified to at trial, had she been given the opportunity. Movant replied, without objection by the State, "That she had saw Tammy smoking several times."

W⎯⎯, called as a witness by movant at the evidentiary hearing in the motion court, testified, without objection:

"I would have called Mike Rosen [sic], and the purpose of his calling would have been that he would have testified that, on the night in question, he returned home with his wife, Charmaine [sic], that he spoke with Tammy; and, upon inquiring as to the whereabouts of Billy Joe, replied that he was, to her knowledge, in East Prairie.

I would also have called Lisa Razor, the daughter of Louise. It was expected [sic]—It was expected that she would have testified to the fact that Tammy Lamb does, in fact, smoke."

W⎯⎯ explained that he did not call Mike Rosson and Lisa Razor during the defense's case-in-chief because he was "saving them for rebuttal." Furthermore, explained W⎯⎯:

"The other reason was also that there was allegations, and I did not want to give the state an opportunity to get into it, concerning sexual molestation of the daughters on Billy Joe's part, that I knew in the background.

I wanted the daughters to get on and off the stand and what I wanted to do

2.   Movant elected not to testify.

3.   At time of trial, Tammy and Michelle Lamb were living with their father in Hoxie, Arkansas.

was have them gone and away, and then—Have them gone and just put on my witnesses to say, 'She smoked,' and that's it.

I didn't want that potential for that damaging evidence or allegations to even come out."

The motion court's findings of fact included the following:

"Assuming that Mr. Rossen [sic] would have testified as claimed, there is no showing that at the time this statement was made it was inconsistent with Mr. Garrett's location at that time. By testimony, the fire was set around 9:00 or 9:30 p.m. and the location at the time of Mr. Rossen's [sic] asking the question to Tammy Lamb was some substantial time later, perhaps time enough for Mr. Garrett to be in East Prairie. Thus, the testimony would not be inconsistent with her statement that she saw Mr. Garrett in the torched residence at 9:30 in Charleston, the crucial time and place herein. Said statement could well be inconsistent with her testimony that after the fire movant was in Charleston at his mother's house. However, without more as to when the statement was made there may not be an inconsistency. Finally, assuming any inconsistency, it is not inconsistent with the crucial testimony that at 9:30 movant was in Charleston.

The testimony as to whether or not Tammy Lamb smoked would have been presented solely for the fact of showing an opportunity for a means whereby Tammy Lamb, herself, could have created the fire. Such testimony is highly speculative, of a minor nature and collateral.

This Court further considers the testimony of [W____] who wanted to have Tammy Lamb off the stand as soon as possible and not have her in the location of being able to submit prior consistent testimony. [W____] realized that his impeachment of Tammy Lamb as to her motive for lying had to be performed with extreme caution for fear of delving into areas wherein [W____] knew that Tammy Lamb had alleged that the defendant had engaged in illegal sexual activities and child abuse upon her. [W____] properly assessed the resultant inflammation such allegations might have upon movant. Thus, [W____'s] failure to call these witnesses in his case in chief is understandable and both a matter of trial strategy as well as impeachment, but impeachment that amounted to minor inconsistencies. As noted in *Hurd vs. State*, 637 SW2d 809 (Mo.App.1982) the mere failure to impeach witnesses by means of 'minor' inconsistencies between trial testimony and testimony or statements given elsewhere does not prejudice the post conviction petitioner and cannot be the basis of granting relief on the ground of denial of effective assistance of counsel. Similarly, absent a showing of actual prejudice to movant, it is not for a court to question the trial strategy of [W____] in his introduction of, or failure to introduce, evidence. *Franklin v. State*, 655 SW2d 561 (Mo.App.1983). No prejudice was demonstrated herein."

On the basis of the above findings and others that we need not quote, the motion court ruled that movant "has not been denied effective assistance of counsel in any of the areas specifically stated by him."

Our review is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Futrell v. State*, 667 S.W.2d 404, 405[1] (Mo. banc 1984).

█ In order to prevail on a claim of ineffective assistance of counsel, a prisoner in a 27.26 proceeding must show that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances, and that the prisoner was prejudiced thereby. *Seales v. State*, 580 S.W.2d 733, 735–37[3] (Mo. banc 1979).

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), decided after *Seales*, the Supreme Court of the United States held that the proper standard for attorney performance in a criminal case is that of reasonably effective assistance, and that when a convicted defendant

complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687–88, 104 S.Ct. at 2064–65[6], 80 L.Ed.2d at 693[11]. However, added the Court, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment if the error had no effect on the judgment. 466 U.S. at 691, 104 S.Ct. at 2067[15], 80 L.Ed.2d at 696[20]. Thus, said the Court, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 466 U.S. at 694, 104 S.Ct. at 2068[19], 80 L.Ed.2d at 698[25].

In *State v. Chandler*, 698 S.W.2d 844, 848 n. 10 (Mo. banc 1985), decided after *Strickland*, the Supreme Court of Missouri discerned no significant difference between the test in *Seales* and the test in *Strickland*. Accordingly, we shall decide the first component of movant's assignment of error by applying the criteria enunciated in *Seales* and *Strickland*.

Preliminarily, it should be noted that a prisoner seeking relief under Rule 27.26 has the burden of establishing his grounds for relief by a preponderance of the evidence. Rule 27.26(f); *Pool v. State*, 670 S.W.2d 210, 211[1] (Mo.App.1984); *Thomas v. State*, 665 S.W.2d 621, 623[1] (Mo.App. 1983).

Neither Mike Rosson nor Lisa Razor was called as a witness at the evidentiary hearing in the motion court; consequently, there is no testimony by them in the transcript of that proceeding to prove that if W____ had called them as witnesses during the defense's case-in-chief at the jury trial, they would have supplied the testimony that movant claims they would have given. There is likewise no testimony by them in the transcript of the jury trial to establish that, had they been allowed to testify, they would have testified in conformity with the offer of proof made by W____.

Furthermore, nothing in the trial transcript or the evidentiary hearing transcript furnishes a clue as to why movant or W____ believed Mike Rosson and Lisa Razor would have testified in the manner outlined by W____. W____ never said he had interviewed either of them, and movant failed to produce, at the evidentiary hearing, a written statement or affidavit by either of them. We are thus left to speculate as to whether Mike Rosson and Lisa Razor would indeed have testified as movant and W____ expected, had Mike and Lisa been placed on a witness stand, under oath.

With that evidentiary vacuum, one could readily conclude that movant failed, at the evidentiary hearing in the motion court, to present evidence to support the first component of his assignment of error.

■ A prisoner seeking post-conviction relief on the ground that his counsel was ineffective in failing to call a witness must show what the testimony of the alleged witness would have been, and how it would have aided him. *Ryder v. State*, 657 S.W.2d 64, 65[1] (Mo.App.1983). In *Carter v. State*, 698 S.W.2d 589, 591[2] (Mo.App. 1985), a contention by a prisoner seeking post-conviction relief on the ground that his attorney was ineffective in failing to endorse and call a witness was rejected, the opinion emphasizing that the prisoner "did not produce one iota of evidence, other than his own hearsay testimony, ... which could demonstrate that his attorney's action prejudiced the outcome of the trial."

■ In the instant case, however, the motion court did not deny the first component of movant's assignment of error on the ground that movant had failed to supply evidentiary support therefor, but instead, as we have seen, assumed that had Mike Rosson and Lisa Razor testified at trial, their testimony would have been as movant alleges. Furthermore, as noted *supra*, the hearsay testimony of movant and W____ as to what Mike Rosson and Lisa Razor would have testified to was received by the motion court without objection by the State. Hearsay evidence, if not objected to, is admissible and may be considered, along with other evidence, in determining

whether a submissible case has been made. *Conlon v. Roeder,* 418 S.W.2d 152, 158–59[5] (Mo.1967); *G____ M____ H____ v. J____ L____ H____,* 700 S.W.2d 506, 512[1] (Mo.App.1985). The probative worth and value of such evidence is for the trier of the facts. *G____ M____ H____,* 700 S.W.2d at 512[1]; *Bourne v. Manley,* 435 S.W.2d 420, 427–28[8] (Mo.App.1968). Consequently, we decline to reject the first component of movant's assignment of error on the ground of lack of evidentiary support.

We first consider W____'s failure to call Lisa Razor during the defense's case-in-chief. An attentive reader will quickly realize that the testimony she supposedly would have given at trial, if properly objected to, should not have been received. Lisa, it will be remembered, was to have been called to rebut the testimony of Tammy Lamb that she (Tammy) had never smoked cigarettes.

■ In Missouri, on cross-examination on collateral matters for the purpose of impeachment, a party is bound by the answer of the witness, *State v. Johnson,* 486 S.W.2d 491, 496[5] (Mo.1972), and a party cannot impeach the witness as to such matters by evidence aliunde, *State v. Baublits,* 324 Mo. 1199, 27 S.W.2d 16, 19–20[8] (1930). A collateral matter is one of no material significance in the case, or not pertinent to the issues as developed. *State v. Shaw,* 694 S.W.2d 857, 859[1] (Mo.App.1985).

Whether Tammy Lamb smoked cigarettes was a collateral matter, as the motion court aptly observed in its findings, quoted *supra.* The only possible materiality of Lisa Razor's testimony would have been to show that inasmuch as Tammy Lamb, had, on past occasions, smoked cigarettes, Tammy, on the night in question, might have been carrying matches or a cigarette lighter, and thus would have possessed a means of igniting the fire.

■ If movant, at the jury trial, had wanted to cast suspicion on Tammy, it would have been unnecessary to show that she smoked in order to demonstrate that she could have started the fire. Tammy, age 15 at time of trial, was baby-sitting at the Rosson home on the night of the fire,

and consequently had access to any matches or other ignition sources available in that residence. Whether Tammy had ever smoked, therefore, was patently a collateral matter and, accordingly, her denial on cross-examination was binding on movant. Lisa Razor's testimony, according to the rules set forth above, would have been inadmissible upon proper objection by the State.

■ However, even if the State failed to make the proper objection, Lisa Razor's testimony, as we have seen, would have added little, if anything, to movant's defense. The question—if there was one—regarding Tammy Lamb was not whether she had ever smoked, but whether there was any reason for the jury to suspect that she had started the fire. Whether she smoked was of scant, if any, materiality on that issue. Movant obviously failed to convince the motion court that there was a reasonable probability that Lisa Razor's testimony would have changed the result of the trial. We hold that the motion court's finding that movant failed to demonstrate prejudice from W____'s failure to call Lisa Razor during the defense's case-in-chief is not clearly erroneous. That being so, movant fails to qualify for relief under *Seales* and *Strickland.*

■ We turn now to W____'s failure to call Mike Rosson during the defense's case-in-chief. A close examination of the two transcripts reveals a subtle, but significant, conflict between the versions of what his testimony would have been.

According to W____'s offer of proof at trial, Rosson would have testified that after he returned home on the night of the fire, he asked Tammy Lamb about movant's whereabouts, and Tammy replied that movant was, to her knowledge, in East Prairie. W____'s testimony at the evidentiary hearing in the motion court coincided with his offer of proof at trial.

Movant, however, testified in the motion court that Rosson would have quoted Tammy as saying that movant had been at East Prairie "all day long." If that is what Rosson's testimony would have been, Tam-

my's purported statement would have been in harmony with the other evidence at trial.

Movant's witnesses testified he was in East Prairie during the day, visiting relatives, and remained there until around midnight. Michelle Lamb, testifying for the State at trial, confirmed that movant had been gone from home during the day, but, according to Michelle, he returned about "two or three hours" before she, her three half-siblings, and her mother left to go to Louise Razor's home around 8:30 p.m. Michelle explained that when they departed, movant remained at the house. Michelle verified that at that time, Tammy was baby-sitting at the Rosson home.

The motion court, in its findings, assumed that if Mike Rosson had been called to the witness stand during the defense's case-in-chief, he would have testified that Tammy answered his inquiry by saying that movant was, to her knowledge, in East Prairie. The motion court found that while the evidence did not establish what time Tammy allegedly made the statement,[4] it was a substantial time after the fire, perhaps long enough for movant to have reached East Prairie. Thus, reasoned the motion court, the purported statement would not necessarily have been inconsistent with Tammy's testimony that she saw movant flee their residence shortly after 9:30 p.m.

The motion court observed that Tammy's alleged statement to Rosson could well have been inconsistent with her testimony that after the fire, movant was in Charleston at Louise Razor's house. However, movant's own evidence showed that he arrived at Louise Razor's house sometime after midnight, so there was no issue regarding movant's location from that time on.

On the other hand, if one assumes that Rosson would have testified in accordance with the version given by movant during movant's testimony in the motion court, there is no demonstrable conflict between Tammy Lamb's testimony and the statement Rosson would have attributed to her. That statement, as we have seen, would have been that movant had been at East Prairie all day long. It would not necessarily have contradicted Tammy's testimony that movant ran from their residence shortly after 9:30 p.m.

As was the case with Lisa Razor's expected testimony, movant failed to convince the motion court that there was a reasonable probability that Mike Rosson's testimony would have changed the result of the trial. We hold that the motion court's finding that movant failed to demonstrate prejudice from W_____'s failure to call Mike Rosson during the defense's case-in-chief is not clearly erroneous. Movant, therefore, has again failed to establish grounds for relief under *Seales* and *Strickland.* The first component of movant's assignment of error is, accordingly, denied.

The second component of movant's assignment of error avers that W_____ rendered ineffective assistance in "failing to investigate and to prepare for trial, which prejudiced movant in that the theories of defense, alibi and prosecution's inability to prove movant actually caused the fire, were not adequately developed."

By seining the argument portion of movant's brief, a task we are not obliged to undertake, *State v. Smith*, 688 S.W.2d 813, 816–17[4] (Mo.App.1985), we discover that the gist of this complaint is that W_____ failed to investigate whether Albert C. Goodin, the owner of the burned dwelling, "had the opportunity to set the fire." Movant boldly asserts: "A fuller investigation of Mr. Goodwin [sic] could have uncovered

---

**4.** Although movant, in his testimony at the evidentiary hearing in the motion court, fixed the time of Tammy Lamb's alleged statement to Mike Rosson as "around nine o'clock," that would have been contrary to all of the other evidence at trial. Tammy Lamb testified she saw movant leave their dwelling shortly after 9:30 p.m., and that she talked to Mike Rosson when he and his wife returned *after the fire.*

Charmane Rosson, who testified as a State's witness at trial, fixed the time of their return as around 9:30 or 9:45 p.m. The Charleston fire chief recalled arriving at the fire about 9:20 p.m. The motion court apparently concluded that Tammy's alleged statement to Mike Rosson could not have been made around 9:00 p.m., and that movant had failed to establish when it was made.

evidence that the owner had the opportunity to set the fire. Such evidence may have raised a reasonable doubt as to movant's guilt."

Movant neglects to direct our attention to any evidence in either of the transcripts demonstrating that Goodin had the opportunity to set the fire. Nothing in Goodin's trial testimony indicates where he was at the time the fire started, and movant did not call Goodin as a witness at the evidentiary hearing in the motion court. Indeed, movant, in his testimony in the motion court, stated that his only complaint about W____'s trial preparation was that W____ did not confer with him enough about the prosecutor's offer to recommend a 5-year sentence if movant pled guilty, which offer movant conceded he had rejected in a hearing outside the presence of the jury during trial. In that hearing, movant registered no complaint about W____'s services.

██ When failure to investigate or interview a witness is the basis of a claim of ineffective assistance of counsel, a prisoner is required to show, among other things, that the witness' testimony would have aided or improved the prisoner's position. *Franklin v. State*, 655 S.W.2d 561, 565[11] (Mo.App.1983); *Williams v. State*, 650 S.W.2d 17, 18[1] (Mo.App.1983).

██ The motion court found that movant had failed to show how further investigation by W____ would have aided movant. That finding is not clearly erroneous; indeed, it is patently correct. The second component of movant's assignment of error is therefore denied, and the judgment is affirmed.

GREENE, P.J., and PREWITT, J., concur.