William P. PIPPIN, deceased, Lorie
Pippin, widow, Appellant,

v.

ST. JOE MINERALS
CORPORATION, Respondent.

No. 16977.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1990.

Motion for Rehearing or Transfer
Denied Nov. 21, 1990.

Application to Transfer Denied
Jan. 9, 1991.

Morris B. Kessler, St. Louis, for appellant.

Joseph H. Mueller, Robyn G. Fox, Moser and Marsalek, St. Louis, for respondent.

SHRUM, Judge.

Claimant, Lorie Pippin (hereafter claimant) sought benefits under the Workers' Compensation Law because her husband William Pippin, now deceased (hereafter employee), was found to have the occupational disease [1] of silicosis.[2] The silicosis diagnosis was made during an autopsy following employee's death. Employee had worked for St. Joe Minerals Corporation (hereafter employer) from 1944 until October 1, 1965, when he retired. Following a hearing, an administrative law judge (ALJ) denied the claim. The ALJ found (a) employee had silicosis; (b) the silicosis condition contributed to causing employee's death; (c) the silicosis condition was not discoverable until employee's death, and the claim was, therefore, timely filed. The ALJ denied the claim finding that there was not sufficient proof on the issue of whether the employee was exposed to an occupational disease in the course of his employment with employer; therefore, the facts did not support a finding that the employee was exposed to the hazard of the occupational disease.

Claimant appealed and on May 3, 1990, the Labor and Industrial Relations Commission affirmed the ALJ's decision [3] denying compensation, adopting and incorporating the ALJ's order as a part of the Commission's decision. The issue here presented is whether the Commission's award de-

---

**1.** Section 287.063, RSMo Supp.1983, reads:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists.

. . . . .

3. The statute of limitation referred to in section 287.430 shall not begin to run in cases of occupational disease until it becomes reasonably discoverable and apparent that a compensable injury has been sustained....

Section 287.067, RSMo Supp.1983:

1. In this chapter the term *"occupational disease"* is hereby defined to mean a disease arising out of and in the course of the employment.... A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment.

**2.** "Silicosis is the pneumoconiosis produced by the inhalation of significant amounts (concentrations) of microscopic particles of crystalline free silica." 4A Gray, Attorneys' Textbook of Medicine, ¶ 205A.00 (1980). Pneumoconiosis is the condition of dust in the lungs. Gray, *supra*, ¶ 205.01 (1970). *Barr v. Vickers, Inc.,* 648 S.W.2d 577, 579, n. 1 (Mo.App.1983).

**3.** The Commission's order denying the award was not a unanimous decision. A dissent was filed in which Commissioner Fowler said: "Denying compensation in this instance is repugnant to the law and completely contrary to the decision in the *Wolfgeher* case [646 S.W.2d 781 (Mo.banc 1983)]."

nying claimant benefits for her husband's death because he was not exposed to the occupational disease of silicosis is supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence. *Barr v. Vickers, Inc., supra,* at 579. *See also Malcom v. La–Z–Boy Midwest Chair Co.,* 618 S.W.2d 725, 726 (Mo.App.1981).

Employee worked for employer from 1944 until October 1, 1965.[4] Employee's daughter testified that she did not live with her parents during the years he worked for employer. She had never seen her father doing any work for employer in any of its facilities. She had toured her father's work premises at Viburnum on a weekend, but never when it was in operation. She had seen her father return from work "a couple [of] times a year while he was working at St. Joe." On those occasions, he usually had to wash a gray dust from his hands and face. Employee's daughter had no idea what that dust was but when she toured the mill at Viburnum, she saw some dust there of the same type she had seen on her father. Over objection, employee's daughter testified that her dad talked about the dust in the mill and how it got on the workers. Without objection, the daughter testified:

Q. Can you give the Court some idea of what the conditions were inside the mill regarding the dust?

A. I was only in the Viburnum mill; I wasn't in the mill at Bonne Terre. Dad only spent a few years in Viburnum. The old mill was in Bonne Terre. There was rock to be crushed there in the crusher and some dust there.

Q. Was the dust over the entire area or just some spots with dust as best you can recall?

A. I would—it was a pretty big place. It was dusty, just say dusty.

During the autopsy by pathologist William L. Drake, Jr., M.D., microscopic examination of employee's lungs revealed old scars of silica which represented primary[5] silicosis of the lungs, limited to the upper lobe on each side. Dr. Drake's opinion was that employee's primary cause of death was arteriosclerotic heart disease, but a significant contributory cause of death was silicosis of both lungs with the immediate cause of death being bronchopneumonia. According to Dr. Drake, employee's death was hastened by reason of the silicotic condition. Without objection, the pathologist testified about employee's occupational history as follows:

Q. ... [D]id you look into the hospital records to determine what the man's occupational history was?

A. Yes, yes. It was not a completely thorough picture, but it did say, I believe, that he worked for a mining company, and it says to quote, the admission note, "a history of exposure to rock dust when the patient worked as an electrician at St. Joe Mine."

Q. Doctor, silicosis, is that a disease that is acutely occupational in origin?

A. Yes, sir, it is. Silicosis arises when the silica is pounded or grated into fine particles by some mechanical method, either sand blasting [sic], drilling, that sort of thing. The bedouins in the desert do not get silicosis because the sand storms have large granules that are coughed up and expectorated. But the fine dust produced by industrial methods produces a two to five micron size particle that stays in the lungs and produces damage, and that's how silicosis is acquired by industrial exposure.

A hypothetical question was asked Dr. Drake about the causal connection between the employee's exposure to the environment at St. Joe Minerals Corporation and

4. Employee was born on April 6, 1902; he died August 30, 1983.

5. Employee's silicoses was categorized as primary, first stage, or early as opposed to more advanced stages; i.e., "moderately advanced" and "advanced" stages. Early stage silicoses (or first stage) is one that may not be apparent on x-ray examination according to Dr. Drake.

his silicosis. He testified, without objection, that if the employee had no other exposure than his work for employer, then that would have to be the source. Dr. Drake could not, based upon his examination, determine how recently employee had been exposed to silica; it could have been as long ago as 1940, 1943, or 1945. The written autopsy report "Correlative Summary" read:

> While the primary underlying cause of death here is arteriosclerotic heart disease with the immediate cause of death the recent myocardial infarct of the left posterior septum, important contributory causes of death were the old chronic silicosis of the lungs and the most recent early bronchopneumonia.

Dr. A.J. Steiner, board certified by the American College of Chest Physicians in pulmonary diseases, first treated employee when he was hospitalized at Missouri Baptist Hospital in July 1981 with cardiac problems. Dr. Steiner identified a copy of an admission note [6] that he dictated July 12, 1981, at Missouri Baptist Hospital and the third paragraph of that medical record was read into evidence. Dr. Steiner, in response to a hypothetical question to which timely objection was made, said, "Well, within a reasonable degree of medical certainty, the exposure, the twenty some odd years to dust while employed at St. Joe Lead Company was the direct cause of his developing silicosis." Subsequently, employer's counsel asked Dr. Steiner:

> Q. With regard to the opinion that you gave earlier regarding this man's

exposure to silica, is it significant to you it was exposure of 22 years as to the duration of the exposure, significant to you in reaching your opinion?

> A. Yes, to some degree it would be.

> Q. Can you explain how it would be?

> A. Well, a gradually developing silicosis, which is apparently what Mr. Pippin had, is usually produced by low concentration of silica in the inhaled particular exposure. In other words, a low concentration of silica over a period of time can produce changes due to silicosis which may not be easily visible on x-ray undifferentiated from other changes on x-ray such as healed granulomatous disease.

The silicotic nodules found in the upper part of employee's lungs suggested to Dr. Steiner that employee's exposure was not a massive exposure, but a lesser degree over a longer period of time. On cross-examination, Dr. Steiner was asked if his opinion would be different or altered if employee's exposure to silica was in the nature of 5 to 6 years sometime in the early 1950's. In response, Dr. Steiner said:

> A. No, sir, I don't think so. When he did work above ground, *there was a good deal of sand dust, so he told me. There was a good deal of sand dust in the area where he worked.*

> Q. So you're basing your opinion on the fact that he continued to be exposed to sand dust even though he wasn't working underground for an additional time, up until his retirement in 1965?

---

6. Employer's counsel objected to the use of a "copy" of the admission note during Dr. Steiner's deposition, but the fact that the document referred to was a copy was the only objection made. Employer's counsel said:
> MR. BURKE: ... At some point I suppose perhaps before the hearing, he can get the original and then we can compare the two, but at that point—
> MR. KESSLER [claimant's attorney]: We'll have the original at the hearing.
> [Employer's counsel]: ... Then we can compare the two. And assuming your copy's accurate, I wouldn't have any problem with what he's doing now, but until that point I'm going to have to object.

Dr. Steiner then said, "This is my dictation all right." Later, upon cross-examination, Dr. Steiner found his original office record form which he made his July 12, 1981, admission dictation. When Dr. Steiner offered to read into the record form his original form, employer's attorney asked:
> Q. (By Mr. Burke) Does it basically set forth what you've already testified? Is there any changes?
> A. No. Word for word. No changes.
> Q. *Then we won't have to read that into the record.* (Emphasis added.)
With that background, Dr. Steiner's deposition was offered into evidence.

A. Yes, sir. (Emphasis added.)

Dr. Steiner testified there was no way anyone could get silicosis such as employee had other than occupationally.

Dr. Martin Davis, a physician having long experience in treating and evaluating patients with silicosis, testified on behalf of the employer. Included among the records he reviewed was employee's record of employment. In a letter dated August 12, 1985, he referred to that employment record as follows:

> Apparently, Mr. William P. Pippin worked for the St. Joe Mineral Corporation for about 22½ years. He did electric welding and he did repair work in the mill. Some of the time he worked underground in a lead mine, but the majority of his work was above ground. He was exposed to dust, mainly sand and limestone dust at his occupation. He retired in 1965.

Dr. Davis testified that none of the available medical records showed any clinical signs of silicosis in employee before his death. He agreed that Dr. Drake's autopsy findings indicated that the employee had first stage pulmonary silicosis (minimal). He said that the employee's silicosis came from inhalation of silica dust. He described the employee as having severe emphysema. It was his opinion the employee suffered no disability because of his silicosis because it had a minimal effect upon his general health. Dr. Davis, in response to a question which hypothesized exposure of the employee to silica during his employment from 1943 to October 1, 1965, said employee's silicosis did not cause employee's death nor hasten his death. In his opinion, the employee's death was the result of emphysema and heart disease.

▇▇ With the above factual background, claimant argues in her first point that the Commission erred in finding that the evidence failed to establish exposure of the employee to the hazard of the occupational disease of silicosis. Claimant here could not sustain her burden of proof by showing a mere possibility that employee was exposed to the hazard of silicosis, but her burden is satisfied if she showed a reasonable probability that the employee was exposed. *Barr v. Vickers, Inc.,* supra, at 580. Such a reasonable probability is a sufficient basis for the Commission to find for claimant. *Id.* See also *Smith v. Terminal Transfer Company,* 372 S.W.2d 659, 664 (Mo.App.1963); *Leonard v. Fisher Body Co. St. Louis Division, Etc.,* 137 S.W.2d 604, 610 (Mo.App.1940). " 'Probable' means that it appears to be founded in reason and experience which inclines the mind to believe, but leaves room for doubt." *Barr, supra,* at 580. This court finds that claimant met her burden of showing a reasonable probability that the employee was exposed to the hazard of silicosis; that indeed, the facts in this case incline the mind to believe that this employee was exposed to the hazard of silicosis during his employment with employer. Such belief is derived from the following.

First, all physicians agreed that the employee had silicosis, first stage.[7] Dr. Drake testified without objection that silicosis was a disease that was "acutely occupational in origin." He further explained (without objection) that:

> Silicosis arises when the silica is pounded or grated into fine particles by some mechanical method, either sand blasting [sic], drilling, that sort of thing. The bedouins in the desert do not get silicosis because the sand storms have large granules that are coughed up and expectorated. But the fine dust produced by industrial methods produces a two to five micron size particle that stays in

---

7. The pathologist, Dr. Drake, testified unequivocally that employee had silicoses, first stage; employer's expert, Dr. Davis, agreed, characterizing the silicosis as minimal. Testimony by Dr. Steiner during direct examination regarding his diagnosis of the employee as having silicosis was objected to on the basis that he was relying upon the "hearsay" autopsy report. However, on cross-examination, employer asked Dr. Steiner: "What type [silicosis] did he have?" Dr. Steiner answered, "Nodular silicosis."

the lungs and produces damage, and that's how silicosis is acquired by industrial exposure.

Dr. Steiner testified, without objection, that there was no way anyone could get silicosis, such as was found in this employee, other than occupationally. The physician hired by the employer, Dr. Davis, reviewed the "record of Mr. Pippin's employment where he was employed." He was asked:

Q. Doctor, where did this silicosis come from that Mr. Pippin had?

A. [By Dr. Davis]: Comes from inhalation of silica dust.

Q. Is there any question in your mind but what that it came from the industrial exposure at St. Joe?

A. If he was exposed to silica at St. Joe I would assume that was the cause, and he had no other history of exposure in any other industry, any other job that he had.

██ There was undisputed evidence presented to the ALJ that silica dust, when produced industrially by mechanical means and inhaled, stays in the lungs and produces damage. Silicosis is the pneumoconiosis produced by inhalation of significant amounts (concentrations) of microscopic particles of crystalline free silica. *Barr, supra,* at 579 n. 1. "It undoubtedly is at least a reasonable inference that silicosis is incidental and peculiar to any work or process which produces and projects into the place of work silica particles of a harmful size, character, and quantity." *Smith v. Harbison Walker Refractories Co.,* 340 Mo. 389, 410, 100 S.W.2d 909, 920 (1936). This court does not mean to hold or suggest that a diagnosis of silicosis and characterization of that disease as an "occupational disease," standing alone, serves to establish the necessary element of "exposure to the occupational hazard." However, the existence of the disease, the size and form of the silica particles which cause the disease, and the fact that the minute silica particles (silica dust) which cause the disease are not found in the usual, normal, sandy environment, are competent and relevant facts that deserve consideration in determining if there was a reasonable probability that employee was exposed to the hazard of silicosis at his place of employment.

Second, the answer given by Dr. Drake to the hypothetical question concerning employee's exposure to the hazard of silicosis was significant. "There is no question but that proper opinion testimony as to causal connection is competent and can constitute substantial evidence." *Harp v. Illinois Central Railroad Company,* 370 S.W.2d 387, 391 (Mo.1963); *Kummer v. Cruz,* 752 S.W.2d 801, 807 (Mo.App.1988); *Dolan v. D.A. Lubricant Co.,* 416 S.W.2d 40, 43 (Mo.App.1967). Without objection, the following question and answer is found in the record:

Q. [To Dr. Drake] Doctor, I'll ask you to consider your findings on the post, the findings, and the results of the tests represented in the hospital record. I'll ask you further to consider the man's work history of some twenty-two and a half years at working in a dusty environment at St. Joe Minerals, that the exposure there was to sand and limestone dust, that he retired after the twenty-two and a half years of work in that industry, lived on the farm and was not subject to any occupational exposure either prior to that twenty-two and a half year stretch or after that. I'll ask you whether within the realm of reasonable medical certainty you have an opinion as to whether or not there's a causal connection between the man's exposure in the environment at St. Joe Led [sic] and the silicosis found on the post mortem?

A. Yes, I believe there must be if he had no further industrial exposure than his work for St. Joe Mineral, then that would have to be the source. And as I said before, silica is not removed, but stays within the body. And we even found a few particles in the abdominal lymph nodes if I recollect correctly. So if that exposure would cease and the

man went on to live a few more decades would still have silicosis.

■ At no time during the somewhat extended direct examination of Dr. Drake did the employer object to the hypothetical question or subsequent questions relating to it, nor to his answers thereto, nor was there any motion to strike the same. Further, the employer cross-examined Dr. Drake at considerable length. However, neither the failure to object nor the cross-examination of the expert eliminate the rule that a hypothetical question must be predicated on facts in evidence and must not assume facts not in evidence. *Thomas v. Myers*, 655 S.W.2d 695, 697 (Mo.App. 1983). A medical expert's opinion must have in support of it reasons and facts supported by competent evidence which will give the opinion sufficient probative force to be substantial evidence. *Jackson v. H.D. Lee Co., Inc.*, 772 S.W.2d 742, 748 (Mo.App.1989). As is spelled out later in this opinion, there was evidence in the record to support every hypothesized fact propounded to Dr. Drake, except for one. There was no evidence that employee had not been exposed to sand and limestone dust *before he went to work for St. Joe.* However, that does not deprive Dr. Drake's testimony of sufficient probative force to be substantial evidence. This follows from the fact that it was not necessary that plaintiff prove a lack of exposure before his St. Joe employment. Section 287.063.1, RSMo Supp.1983, created a conclusive presumption that he was exposed "when for any length of time, however short, he is employed in an occupation ... in which the hazard of the disease exists." There were facts hypothesized, supported by evidence, that this employee was exposed to limestone and sand dust while working for St. Joe. Those facts, together with the physician's description of silicosis as an occupational disease, provided sufficient evidence to support the requirements of § 287.063.1.

Further, § 287.063.2 made employer liable for the compensation if St. Joe was the *last* employment where employee was exposed.[8] There was certainly evidence in the record to support that hypothesized fact. Accordingly, Dr. Drake's testimony and answer to the hypothetical question did provide sufficient substantial evidence to support a finding that the employee was exposed to the hazard of the occupational disease.

■ Employee's daughter established that he had worked for employer from 1944 until his retirement in 1965. Additionally, she said upon retirement employee had lived on a farm looking after cattle until 1975 when "he moved to town, he was no longer able to feed the cattle or mow the grass." This is evidentiary support for the hypothesized work history at St. Joe Minerals Corporation and that employee was not subject to "occupational exposure" after his retirement. The daughter's testimony that on the infrequent instances when she was home, she saw her father return from work with "dust" on his face would not support the hypothesis that he worked in a "dusty environment" and that the exposure was to "sand and limestone dust." However, it is corroborative of other evidence of such exposure. The third paragraph of the Missouri Baptist Hospital admission note for employee's July 12, 1981, admission was read into the record:

> He worked in a lead mine doing electric welding from 43 to 47. This at times was below ground but he was usually above ground. After that he did repair work in the mill where there was a good bit of dust, *mainly sand and limestone.* He was separated from the ore, chiefly lead, zinc and copper.
>
> He did this work for 22 and a half years. He retired 16 years ago. (Emphasis added.)

The only objection made to the reading of this document into the record was that it

---

**8.** Section 287.063.2, RSMo Supp.1983, read: "The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure."

was a copy. When Dr. Steiner found the original and offered to read that into the record, counsel for employer, upon being advised that the original read the same as the copy, said, "Then we won't have to read that into the record." No objection was made to the hearsay nature of such evidence. It has long been the rule that hearsay evidence, if not objected to, is admissible and may be considered, along with other evidence, in determining whether a submissible case has been made. *Garrett v. State,* 727 S.W.2d 171, 176–77 (Mo.App. 1987). "It is proper to allow hearsay evidence as a basis for an expert opinion if that evidence is otherwise trustworthy and necessary." *Young v. St. Louis University,* 773 S.W.2d 143, 145 (Mo.App.1989).

Although there is authority to the contrary,[9] the general rule set forth in *Conlon v. Roeder,* 418 S.W.2d 152, 159 (Mo.1967), has been generally followed:

That the evidence of head injury and unconsciousness ... was normally subject to objection as hearsay does not deprive it of probative value because "[w]hile * * * hearsay, it was not objected to, and in fact was adduced by defendant's counsel. It is the established rule that hearsay evidence, if not objected to, is admissible and may be considered, along with other evidence, in determining whether a submissible case has been made." *Hill v. Seaboard Fire & Marine Ins. Co.,* Mo.App., 374 S.W.2d 606, 609[3]. And see also *Corley v. Andrews,* Mo.App., 349 S.W.2d 395, 400–401[3, 4], where, as here, a doctor's testimony based on unobjected-to hearsay, sought later to be stricken, was given "its natural probative force"; and *Hawkins v. Nixdorff–Krein Mfg. Co.,* Mo.App., 395 S.W.2d 247, 250 [1, 2], where a failure to move to strike hearsay evidence which supported the doctor's opinion was a waiver of objection to the opinion.

In *Harris v. Goggins,* 374 S.W.2d 6 (Mo. banc 1963), a physician who had never seen decedent, expressed opinions in response to hypothetical questions that were based upon the hospital records which had been admitted in evidence. Defendant objected to the hypothetical question, saying it was improper because it was based on hearsay and was not based upon facts in evidence.

We rule this point against defendant. These hospital records were all admitted in evidence. That being true, we think they may be properly considered by the witness as a basis for opinion testimony. [Case cited.]

*Id.* at 15. This court finds that the July 1981 work history contained as a part of the admission records for employee's hospitalization could properly be considered by Dr. Drake as a basis for his opinion testimony.

The employee's work history record found in the hospital admission record would have been particularly reliable. The statements were made by the employee 2 years before anyone knew employee had silicosis. At that time, employee had cardiac problems, congestive heart failure, and arteriosclerotic heart disease. Dr. Steiner said he took a "family history" and "work history" routinely because "[s]ometimes it leads to a clue as to diagnosis." The record is devoid of any indication that the 1981 hospitalization was for purposes of treatment or diagnosis of a pulmonary condition. It is unreasonable to suppose that the employee, under the facts here shown, would have given a false work history to Dr. Steiner. 31A C.J.S. *Evidence* § 246(b) (1964). Employee's declarations to Dr. Steiner concerning his work history when seeking treatment for a cardiac condition are deemed to be trustworthy. 29 Am. Jur.2d *Evidence* § 683 (1967).[10] Accordingly, the admission summary provides probative evidence of employee's exposure to the

---

**9.** *See, e.g., Kozeny–Wagner, Inc. v. Shark,* 752 S.W.2d 889, 894 (Mo.App.1988).

**10.** In this instance, the work history was not taken by Dr. Drake as a treating physician. The

history was not obtained concurrent with treatment or examination of employee by Dr. Drake. Accordingly, the general rule that the physician *"may not* base his opinion upon *or testify to statements of the patient with respect to past*

occupational disease of silicosis in his employment at St. Joe Minerals Corporation.

Third, evidence of the employee's exposure was provided through Dr. Davis, employer's expert. A portion of the material furnished Dr. Davis was the employment records for the employee. Either from those records or from the employee's hospital records, Dr. Davis testified he wrote a report[11] dated August 12, 1985, which contained the following:

> I have had an opportunity to see various medical records pertaining to William P. Pippin. Apparently, Mr. William P. Pippin worked for the St. Joe Mineral Corporation for about 22½ years. He did electric welding and he did repair work in the mill. Some of the time he worked underground in a lead mine, but the majority of his work was above ground. *He was exposed to dust, mainly sand and limestone dust at his occupation.* He retired in 1965. (Emphasis added.)

Dr. Davis' August 12, 1985, report was furnished to Dr. Drake and he had it available to him at the time he reached his conclusion that, absent exposure elsewhere, the silicosis of the employee would have been caused by his exposure during his employment at St. Joe Minerals Corporation. Dr. Davis acknowledged that employee had silicosis. However, in the opinion of Dr. Davis, employee died of acute myocardial infarction and that his silicosis disease did not hasten employee's death nor did it cause or contribute to employee's death "in any measure." That opinion was expressed in response to a hypothetical question by counsel for the employer. One of the facts which Dr. Davis was asked to assume was that from 1943 until 1965, employee was employed in a situation where he may have been exposed to silica.[12]

■ On cross-examination, Dr. Davis said that employee's silicosis came "from inhalation of silica dust."

> Q. Is there any question in your mind but ... that it came from the industrial exposure at St. Joe?
>
> A. If he was exposed to silica at St. Joe I would assume that was the cause, and *he had no other history of exposure in any other industry, any other job* .... (Emphasis added.)

Recalling that among the records Dr. Davis had available for his review were employee's employment records, his statement about the absence of other "history of exposure in any other industry, any other job" is particularly significant. There was a drouth of evidence offered by claimant to support the hypothesized fact propounded to Dr. Drake that the employee "was not subject to any occupational exposure ... prior to that twenty-two and a half year stretch [employment at St. Joe Minerals Corporation]." However, while such omitted fact was not in evidence at the time, it was later offered by defendant through Dr. Davis. *Hunter v. St. Louis Southwestern Railway Company*, 315 S.W.2d 689, 696 (Mo.1958). A party is bound by the uncontradicted testimony of his own witnesses,

---

*physical conditions, circumstances surrounding the injury, or the manner in which the injury was received," Schears v. Missouri Pacific Railroad Company*, 355 S.W.2d 314 (Mo. banc 1962) and cases cited therein (emphasis in original); *Holmes v. Terminal R.R. Assn. of St. Louis*, 363 Mo. 1178, 257 S.W.2d 922 (1953); *Hughey v. Graham*, 604 S.W.2d 626, 629 (Mo.App.1980), has no application to the facts of this case.

11. "Without being identified as such, the report appears to be the medical report of employer's examining physician which must be furnished the employee pursuant to § 287.210.3. The report was attached to the deposition of Dr. Davis and was a part of the medical evidence before the ALJ and the Commission.

12. As employer's counsel originally propounded the hypothetical question, it read, in part: "Further assume that from 1943 until July of 1958, during that time he was employed in a situation where he may have been subject to exposure to silica...." Claimant's attorney objected on the basis that the hypothetical question excluded possible exposure to silica dust during a portion of his employment. Thereupon, employer's attorney said: "Well, there may be evidence of that. For the purposes of the question, assume further ... that he was exposed to silica after 1958 and up until 1965, the time he was retired...."

including that elicited on cross-examination. *Silberstein v. Berwald,* 460 S.W.2d 707, 710 (Mo.1970); *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 879 (Mo.App.1985).

Based upon the above principles, this court finds the hypothetical question propounded to Dr. Drake was based upon facts in evidence and was not a guess. *Perkins v. Kroger Co.,* 592 S.W.2d 292, 294–95 (Mo.App.1979). Given the rule that in workers' compensation proceedings, all doubts should be resolved in favor of coverage, *Barr v. Vickers, Inc.,* 648 S.W.2d at 580; *Enyard v. Consolidated Underwriters,* 390 S.W.2d 417, 423, 430 (Mo.App. 1965), a sufficient basis for the opinion of Dr. Drake was established when the evidence tended to prove all the facts upon which the opinion was hypothecated. *State v. Rose,* 271 Mo. 17, 26, 195 S.W. 1013, 1016 (1917); *Fullerton v. Fordyce,* 144 Mo. 519, 531, 44 S.W. 1053, 1056 (1897).

◼ Fourth, Dr. Steiner's opinion aided claimant in showing that there was a reasonable probability that employee was exposed to silica. In response to a hypothetical question, Dr. Steiner said that the employee's exposure for "twenty some odd years" to limestone and sand dust while employed at St. Joe Minerals Corporation was the cause of the employee's silicosis.

Employer's counsel objected to the hypothetical question.[13] It is the duty of a party to object to the form of a hypothetical question and point out wherein it is erroneous if it is believed to be so. *Perkins v. Kroger Co., supra,* at 294–95. Here, employer's objection to the consideration of the autopsy report by Dr. Steiner is not a sound objection. The autopsy report was in evidence by agreement. It was undisputed that the employee had silicosis. The only purpose for including consideration of the autopsy report was to hypothesize a fact which employer acknowledged; namely, that the employee had silicosis. With those facts existing, allowing Dr. Steiner to consider the autopsy report was not error. Employer was given the opportunity to offer additional facts as part of the employee's hypothetical question. One of the facts which employer suggested be included was a "negative medical history following his retirement, some of the medical regarding x-ray history.... [t]he man's pulminary [sic] history." Those were facts which Dr. Steiner had already testified to. In fact, as elicited upon cross-examination, Dr. Steiner never listed in the discharge summary or on the death certificate, silicosis as being a cause contributing to death. Therefore, the alleged omitted facts were facts which, to a large extent, came into evidence from Dr. Steiner. Their inclusion in the hypothetical question was not neces-

---

**13.** Q. [To Dr. Steiner]: [C]onsider the history of some 22 and a half years of working in a dusty environment exposed to sand and limestone dust. That he then retired, lived on a farm, was not subjected to any occupational exposures.

Thereafter in 1965 until 1983 when he died, I ask you to consider the findings of the post-mortem examination and I'll ask you whether or not, within the realm of reasonable medical certainty, you have an opinion as to whether or not there exists a causal connection between the man's exposure in the environment at the St. Joe Lead Company and the silicoses found on post-mortem?

Employer's counsel then objected:

No foundation. Part of the foundation or basis for the opinion is going to be based on hearsay of the autopsy report. There is significant facts following the man's medical history that haven't been included in the hypothetical. That's the basis of the objection.

MR. KESSLER [claimant's attorney]: Well, I'll include what you want to include.

MR. BURKE [employer's attorney]: Well, the fact that he has a negative medical history for 16 years following his retirement, some of the medical regarding x-ray history has not been included. The man's pulminary [sic] history. I think there is just significant facts that need to be included before this doctor can give an opinion within a reasonable degree of medical certainty.

In addition, the opinion is going to be based partly on this autopsy report which includes the conclusion and findings of it. The separate physician constitutes hearsay, but subject to that.

Thereupon Dr. Steiner expressed his opinion. The record does not reflect what ruling, if any, the ALJ or commission made on the objections.

sary. They would have necessarily been a part of the information available to Dr. Steiner at the time he was called upon to express his opinion. Significantly, employer did not suggest that the hypothetical question include facts concerning the employee's possible exposure to silica dust at some place or time other than when employed by employer. This court is convinced that Dr. Steiner's opinion was properly received, had a factual foundation, and inclines the mind to believe employee was exposed to the occupational hazard of silicosis while employed at St. Joe Minerals Corporation.

"The fundamental purpose of the Workers' Compensation Law is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 783 (Mo.banc 1983). All of the provisions of the Workers' Compensation Law are to be liberally construed with a view to the public welfare. Section 287.800, RSMo. The law is intended to extend its benefits to the largest possible class, and any doubt as to the right of an employee to compensation should be resolved in favor of the injured employee. *Wolfgeher, supra,* at 783; *Greer v. Department of Department of Liquor Control,* 592 S.W.2d 188, 193 (Mo.App.1979). Such liberality is especially evidenced for occupational diseases by § 287.063.1, which mandates that an employee is to be conclusively deemed to have been exposed to the hazards of an occupational disease when he is employed in an occupation or process in which the hazard of the disease exists. The Commission's finding [14] that the physicians merely assumed there was sufficient free-floating silica in employee's work place to consti-

tute a hazard is not supported by competent and substantial evidence upon the whole record. Section 536.140.

This court believes the record established a basis for the Commission to find that Dr. Drake and Dr. Steiner could determine or infer from the facts stated in the hypothetical question (together with their articulated knowledge of the cause of silicosis) that sufficient silica was in the air that employee was breathing for him to be subjected to the hazards of silicosis. *Barr v. Vickers, Inc., supra,* at 583–84. The Commission, by adopting the ALJ's findings, determined that employee had silicosis and such condition contributed to causing his death. That finding is supported by competent and substantial evidence on the whole record. Having so determined and having determined that the Commission's finding that claimant was not exposed to the hazard of the occupational disease is unsupported by competent and substantial evidence on the whole record, this court reverses the judgment of the Commission. The cause is remanded to the Commission with directions to enter an order in favor of the claimant [15] in accordance with this decision. Reversed and remanded.

FLANIGAN, C.J., concurs and also concurs in the concurring opinion of PARRISH, J.

PARRISH, P.J., concurs with concurring opinion.

PARRISH, Judge, concurring.

I concur. I do so with some reluctance and mindful of the standard of appellate review pursuant to which this court considers an appeal from a decision of the Labor and Industrial Relations Commission (Com-

14. The Commission's finding being the same as that of the ALJ inasmuch as the Commission adopted and incorporated the ALJ's opinion in full in making its award.

15. Claimant and employer had stipulated that the claim would be at the maximum rate of compensation in effect on the date of his last employment and exposure on October 1, 1965;

the compensation rates at that time were $47.50 for any death benefit with a maximum payment of $16,500.00. The maximum burial benefit was $650.00. No claim was made for temporary total disability or medical expense. Claimant's attorney requested a fee of 25 percent of the amounts awarded. The order should be in accord with this.

mission), viz., that a determination by the Commission is not to be disturbed on appeal unless it "is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence." *Malcom v. La–Z–Boy Midwest Chair Co.,* 618 S.W.2d 725, 726 (Mo.App.1981). However, the findings upon which the Commission relies in order to deny benefits in this case appear to me to be inconsistent.

I am unable to discern any rational basis for the ultimate finding of the Commission—that the claim was not compensable due to insufficient proof that decedent was exposed to an occupational disease in the course of his employment with respondent. Given that the Commission found (1) that decedent had silicosis and (2) that the silicosis condition contributed to cause his death (albeit that evidence by way of the expert opinion of at least one physician was to the contrary); and given the fact that silicosis is an occupational disease that can only be contracted in an industrial environment, I am of the opinion that the Commission's determination that evidence was not sufficient to show exposure of the decedent to the hazard which produced silicosis while decedent was employed by respondent is clearly contrary to the overwhelming weight of the evidence.

Recognizing that the Commission is not compelled to accept competent substantial evidence as true, the Commission cannot, nevertheless, arbitrarily cast aside "competent, substantial, and undisputed testimony of witnesses who are not shown by the record to have been impeached." *Scott v. Wheelock Bros., Inc.,* 357 Mo. 480, 209 S.W.2d 149, 151 (1948). It appears to me that the Commission did arbitrarily cast aside such evidence as to the issue of decedent's exposure, while employed by respondent, to the hazard that produces silicosis.

Respondent was the last employer of decedent. The employment was shown to be in an environment in which the hazard of silicosis exists. Decedent was not exposed to that hazard after he left respondent's employ. Considering the mandate of

§ 287.063, RSMo 1986, and the other findings by the Commission, the Commission's denial of benefits on the basis stated in its findings is, in my opinion, clearly contrary to the overwhelming weight of the evidence presented regarding decedent's exposure to the hazard of silicosis during his employment with respondent.